FILED

2018 JUL -9 PM 2:31

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY

1  Rob Hennig (State Bar No. 174646)
   rob@employmentattorneyla.com
2  Samuel M. Brown (State Bar No. 308558)
   sam@employmentattorneyla.com
3  HENNIG RUIZ & SINGH
   3600 Wilshire Boulevard, Suite 1908
4  Los Angeles, CA 90010
   Phone: (213) 310-8301
5  Facsimile: (213) 310-8302

6  Attorney for Relator Nathan S. Lewis

7

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10

11                              **CV18-5964-CAS(RAOx)**

12  UNITED STATES OF AMERICA *ex rel.*   )   Case NO.:
    [UNDER SEAL]                         )
13                                       )
         Plaintiff,                      )
14                                       )   FILED UNDER SEAL PURSUANT
    v.                                   )   TO 31 U.S.C. § 3730 subd. (b) (2)
15                                       )
    [UNDER SEAL]                         )
16                                       )   JURY TRIAL DEMANDED
                                         )
17       Defendants.                     )
                                         )
18                                       )
                                         )
19                                       )
                                         )
20                                       )
                                         )
21                                       )
                                         )
22  _____ )

23       FILED IN CAMERA AND UNDER SEAL PURSUANT TO COURT

24  ORDER.

25  ///

26  ///

27  ///

28  ///

PAID

JUL -9 2018

Clerk, US District Court
COURT 4612

HENNIG
RUIZ &
SINGH

-1-

COMPLAINT

Rob Hennig (State Bar No. 174646)
rob@employmentattorneyla.com
Samuel M. Brown (State Bar No. 308558)
sam@employmentattorneyla.com
HENNIG RUIZ & SINGH
3600 Wilshire Boulevard, Suite 1908
Los Angeles, CA 90010
Phone: (213) 310-8301
Facsimile: (213) 310-8302

Attorney for Relator Nathan S. Lewis

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA *ex rel.* NATHAN S. LEWIS,

    Plaintiff,

    v.

CALIFORNIA INSTITUTE OF TECHNOLOGY, a nonprofit California corporation; HARRY A. ATWATER, an individual; EDWARD M. STOLPER, an individual; and JACQUELINE K. BARTON, an individual, inclusive,

    Defendants.

Case NO.:

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730 subd. (b) (2)

JURY TRIAL DEMANDED

FILED IN CAMERA AND UNDER SEAL PURSUANT TO COURT ORDER.

///

///

///

///

HENNIG RUIZ & SINGH

On behalf of the United States of America pursuant to the United States False Claims Act (hereinafter "FCA"), 31 U.S.C. §§ 3729-33, Relator Nathan S. Lewis (hereinafter "Relator" or "Plaintiff") files this *qui tam* Complaint for treble damages and civil monetary penalties against Defendants California Institute of Technology (hereinafter "Caltech"), Harry A. Atwater (hereinafter "Dr. Atwater"), Edward M. Stolper (hereinafter "Dr. Stolper"), and Jacqueline K. Barton (hereinafter "Dr. Barton"). This action arises from a scheme to defraud two federally funded and separately awarded projects within the Department of Energy's ("DOE") innovation hub, called the Joint Center for Artificial Photosynthesis (hereinafter "JCAP"). The first federally awarded project is hereby referred to as "JCAP 1", and the second federally awarded project is hereby referred to as "JCAP 2". JCAP was established by DOE and is led and/or has been led and administered by Defendants Caltech, Dr. Atwater, Dr. Stolper, and Dr. Barton. Defendants have inappropriately diverted, cross-billed, and misallocated congressionally appropriated federal funds to support unapproved and unauthorized research projects. Defendants have made material, substantive, and false statements in the JCAP 2 Proposal that have led to non-conforming work and fraudulent billing to the Federal Government. Furthermore, Defendants have falsely certified and have failed to disclose conflicts of interest with JCAP and have used government funds to advance personal and institutional financial interests. Additionally, Plaintiff brings a cause of action for retaliation in violation of 31 U.S.C. § 3730(h) against Defendants Caltech due to adverse actions taken against Relator in the form of removal from an endowed seminar series; following a Caltech faculty hearing committee meeting in which Relator addressed non-compliance with the JCAP 1 and JCAP 2 projects, as well as other related issues of concern. In support of the claims, Relator alleges as follows:

## I. INTRODUCTION.

1. This is an action brought by Plaintiff/Relator, Nathan S. Lewis, an

HENNIG
RUIZ &
SINGH

individual, on behalf of the United States of America, to recover damages and civil penalties against Defendants Caltech, Dr. Atwater, Dr. Stolper, Dr. Barton and DOES 1 through 10, pursuant to the FAC, 31 U.S.C. §§ 3729-33, and a claim for retaliation against Defendant Caltech under 31 U.S.C. § 3730(h).

2.     Defendants have defrauded two federally funded awards through fraudulent activities including, but not limited to, deliberately and inappropriately misallocating, cross-billing, and diverting Federal Government funds intended to support two JCAP projects, JCAP 1 and JCAP 2. The JCAP 1 project is intended to develop an artificial solar-fuel generation technology–a low-cost generator to make fuel from sunlight ten (10) times more efficiently than plants. The JCAP 2 project is intended to develop scientific principles of heterogeneous catalysis to sustainably convert carbon dioxide into liquid transportation fuels (i.e., gasoline and methanol). Specifically, Defendants have inappropriately and fraudulently cross-billed costs from the JCAP 1 project onto the JCAP 2 project. Furthermore, Defendants have used the Federal Government funds to support unapproved and unauthorized work in part for Defendants' benefit. Defendants falsely certified that they had no conflicts of interest with the JCAP 1 and/or JCAP 2 projects, but in fact, steered funding to perform work that would provide personal and/or institutional financial benefit. Lastly, Defendants have made material, substantive, and false statements in the JCAP 2 Proposal that have led to non-conforming work and fraudulent billing to the Federal Government.

3.     To receive funding for the JCAP 1 and JCAP 2 projects, Defendants submitted applications to the Federal Government. As part of its two separate applications, Defendants were required to make specific certifications and assurances to DOE and Congress. These certification and assurances: (1) requires the awardee to provide true, complete, and accurate information in its application; (2) obligate the awardee to abide by the Office of Management and Budget's ("OMB") Uniform Guidance Circular A-110, (3) obligate the awardee to comply

HENNIG
RUIZ &
SINGH

with numerous federal statutes and the Code of Federal Regulations ("C.F.R.") provisions, (4) disclose conflicts of interest, and (5) require the awardee to acknowledge that any false or fraudulent statements or claims may lead to criminal, civil, or administrative penalties. The OMB, in particular, promulgated regulations, policy statements, and circulars specifically to prevent and uncover fraud. While the OMB addresses a wide variety of topics, the fundamental theme is that the awardee and its officers are ultimately responsible for federally funded awards.

4. Pursuant to 31 U.S.C. § 3729(a)(1), the FCA provides that any person who submits a false claim to the government is liable for a civil penalty of between $5,000.00 and $10,000.00 for each such claim, and three times the amount of the damages sustained by the government. The FCA permits persons having information regarding a false or fraudulent claim against the government to bring an action on behalf of the government and to share in any recovery.

## II. JURISDICTION AND VENUE.

5. This is a civil action arising under the laws of the United States to redress violations of 31 U.S.C. §§ 3729-3730. This Court has subject matter jurisdiction over this action: (i) pursuant to 31 U.S.C. §§ 3732, which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§ 3729 and 3730; (ii) pursuant to 28 U.S.C. § 1331, which confers federal subject matter jurisdiction; and (iii) pursuant to 28 U.S.C. § 1345, because the United States is a plaintiff.

6. This Court has personal jurisdiction over Defendant Dr. Atwater pursuant to 31 U.S.C. § 3732(a) because Defendant Dr. Atwater can be found, resides, or transacted business in this district, or an act proscribed by 31 U.S.C. § 3729 occurred in this district. The defendant made, or caused to be made or used, false or fraudulent records in this district to get false or fraudulent claims paid or approved by the Federal Government of the United States.

HENNIG
RUIZ &
SINGH

7.      This Court has personal jurisdiction over the Defendant Dr. Stolper pursuant to 31 U.S.C. § 3732(a) because Defendant Dr. Stolper can be found, resides, or transacted business in this district, or an act proscribed by 31 U.S.C. § 3729 occurred in this district. The defendant made, or caused to be made or used, false or fraudulent records in this district to get false or fraudulent claims paid or approved by the Federal Government of the United States.

8.      This Court has personal jurisdiction over the Defendant Dr. Barton pursuant to 31 U.S.C. § 3732(a) because Defendant Dr. Barton can be found, resides, or transacted business in this district, or an act proscribed by 31 U.S.C. § 3729 occurred in this district. The defendant made, or caused to be made or used, false or fraudulent records in this district to get false or fraudulent claims paid or approved by the Federal Government of the United States.

9.      Venue is proper in this District under 31 U.S.C. § 3732(a) and 28 U.S.C § 1391 because Defendants can be found, reside in, and transact business in this District, and because Defendants committed acts within this District that violate 31 U.S.C. § 3729.

## III.   PARTIES.

### A.   Relator Nathan S. Lewis.

10.     Plaintiff and Relator Nathan S. Lewis, an individual, brings this action on behalf of himself and the United States pursuant to 31 U.S.C. § 3730(b)(1). Relator is a citizen and resident of the State of California and is an internationally recognized expert in solar fuels and solar chemicals. Relator has direct experience with and possesses personal knowledge of Defendants Caltech, Dr. Atwater, Dr. Stolper, and Dr. Barton's activities described herein. Relator gained first-hand knowledge of the facts alleged during his thirty (30) years of employment, from approximately 1988 through 2018, with Defendant Caltech as a Professor of Chemistry and appointments as the JCAP Director, from approximately September

HENNIG
RUIZ &
SINGH

of 2010 through January of 2013, and JCAP Scientific Director, Project Leader, and Internal Principal Investigator (hereinafter "Internal PI") from approximately January of 2013 through the present time.

11. To the extent that there has been a public disclosure is unknown to Relator. Relator is, nevertheless the original source of the information upon which the allegations in this Complaint are based, pursuant to 31 U.S.C. § 3630(e)(4). Relator is also the original source of the information regarding the business practices described herein that shows that the Defendants knowingly, fraudulently, and inappropriately misallocated, cross-billed, and diverted congressionally appropriated funds to support unapproved and unauthorized research projects in part for Defendants' benefit. Furthermore, Defendants falsely certified and failed to disclose that they had no conflicts of interest with the JCAP 1 and JCAP 2 projects, but in fact, steered funding to perform work that would provide personal and/or institutional financial benefit. Lastly, Defendants have made material, substantive, and false statements in the JCAP 2 Proposal that have led to non-conforming work and fraudulent billing to the Federal Government.

12. Relator has voluntarily disclosed to the United States substantially all the information on which the allegations and transactions described herein are based as well as voluntarily provided the information to the Federal Government concurrently with the filing of this action under 31 U.S.C. § 3730(b).

**B. Defendant California Institute of Technology.**

13. Defendant California Institute of Technology is a private non-profit teaching and research university incorporated in the State of California, with its main campus located in Pasadena, California. In addition to serving as an academic institution, many of Caltech's divisions and departments conduct scientific research with the assistance of Federal awards and projects, including grants, contracts, and cooperative agreements. JCAP was established in 2010 as a DOE Innovation Hub and was initially authorized and approved by congressional action to create a low-

cost generator to make fuel from sunlight ten (10) times more efficiently than plants, with initial emphasis on the production of hydrogen from water and sunlight. JCAP 2 was authorized, appropriated, and awarded in 2015 to develop scientific principles of heterogeneous catalysis to sustainably convert carbon dioxide into liquid transportation fuels (i.e., gasoline, methanol). Both the JCAP 1 and JCAP 2 awards are directed by Caltech, with one of JCAP's primary sites at Caltech. Defendant Caltech, through its position as the lead institution for the JCAP1 and JCAP 2 projects, knowingly, falsely, and/or intentionally diverted and misallocated congressionally appropriated funds to support unapproved and unauthorized research projects in part for Caltech's benefit. Furthermore, Defendant Caltech has failed to disclose and falsely certified that it had no conflicts of interest with both the JCAP 1 and JCAP 2 federal awards, but in fact, steered funding to perform work that would provide personal and/or institutional financial benefit. Defendants have made material, substantive, and false statements in the JCAP 2 Proposal that have led to non-conforming work and fraudulent billing to the Federal Government.

C.     **Defendant Harry A. Atwater.**

14.     Defendant Dr. Harry A. Atwater, an individual, is a researcher and Professor of Applied Physics and Material Sciences at Caltech and was appointed and is currently the Director of the JCAP 1 as of October of 2014, and subsequently selected as the Director of the JCAP 2 project. Dr. Atwater used his position as Director of JCAP 1 to knowingly, falsely, and/or intentionally divert, cross-bill, and misallocate congressionally appropriated federal funds to support unapproved and unauthorized research projects in part for Defendant Dr. Atwater's benefit. Furthermore, Defendant Dr. Atwater has failed to disclose and falsely certified that he had no conflicts of interest with both the JCAP 1 and JCAP 2 projects. Lastly, Defendant Dr. Atwater has made material, substantive, and false statements that have led to non-conforming work and fraudulent billing to the Federal Government.

**D.     Defendant Dr. Edward M. Stolper.**

15.     Defendant Dr. Edward M. Stolper, an individual, is a researcher and Professor of Geology, Senior Advisor to Caltech's Vice President for Development and Institute Relations, and served as Caltech's Provost from April 20, 2007, through September 30, 2017. As Caltech's Provost, Defendant Dr. Stolper served as the Chair of JCAP 1 Board of Directors and JCAP 2's Governance Board. Defendant Dr. Stolper used his position as Caltech's Provost and Chair of JCAP 1 Board of Directors and JCAP 2's Governance Board to knowingly, falsely, and/or intentionally divert, cross-bill, and misallocate congressionally appropriated federal funds to support unapproved and unauthorized research projects. Furthermore, Defendant Dr. Stolper has failed to disclose and falsely certified that Defendant Caltech had no conflicts of interest with both JCAP 1 and JCAP 2 projects. Lastly, Defendant Dr. Stolper has made material, substantive, and false statements that have led to non-conforming work and fraudulent billing to the Federal Government.

**E.     Defendant Dr. Jacqueline K. Barton.**

16.     Defendant Dr. Jacqueline K. Barton, an individual, is a researcher and Professor of Chemistry at Caltech, is currently serving as Caltech's Chair of the Division of Chemistry and Chemical Engineering (hereinafter "CCE"), is a member of the JCAP 1 Board of Directors and of the JCAP 2 Governance Board and is a member of the Board of Directors of DowDuPont, Inc. Defendant Dr. Barton used her position as a member of the JCAP 1 Board of Directors and JCAP 2's Governance Board to knowingly, falsely, and/or intentionally divert and misallocate congressionally appropriated federal funds to support research projects in part for Defendant Dr. Barton's benefit. Furthermore, Defendant Dr. Barton has failed to appropriately manage and recuse herself from conflicts of interest from the JCAP 1 and JCAP 2 projects, but in fact, steered funding to perform work that would provide personal and/or institutional financial benefit. Lastly, Defendant Dr. Barton has made material, substantive, and false statements that have led to non-

HENNIG
RUIZ &
SINGH

conforming work and fraudulent billing to the Federal Government.

## IV.   BACKGROUND.

### A.   The Establishment of the JCAP 1 Project.

17.   On or around December 22, 2009, DOE issued a Funding Opportunity Announcement ("FOA") titled "Energy Innovation Hub – Fuels From Sunlight" (FOA number DE-FOA-0000214). Then, in or around September 30, 2010, DOE initiated a federal award (award number DE-SC0004993) of approximately $116,000,000 to a consortium of educational and research institutions through congressional appropriations. The period of performance for the JCAP 1 project was set to span from on or around September 30, 2010, through September 30, 2015, for work limited to that described in the approved proposal. DOE selected Defendant Caltech to serve as the lead institution, along with a consortium of partner institutions including the Lawrence Berkeley National Laboratory (hereinafter "LBNL"), SLAC National Accelerator Laboratory (originally named the Stanford Linear Accelerator Center, hereinafter "SLAC"), the University of California, Irvine (hereinafter "UCI"), and the University of California, San Diego (hereinafter "UCSD"). The primary goal of JCAP 1 was to develop and demonstrate a device that inputs only water and sunlight to produce hydrogen and oxygen.

18.   Pursuant to the "JCAP Project and Cooperative Agreement" ("Cooperative Agreement" or "Governing Contract"), signed in or around September of 2010, DOE established JCAP as an Energy Innovation Hub and selected Defendant Caltech to lead JCAP. The Cooperative Agreement serves as the agreement mechanism that provides DOE and JCAP's roles and responsibilities, approved work scope and plan, JCAP Oversight and Management plan ("OMP") (contractually obligated and duly executed), award terms and conditions, "change controls" (a process that insures that any changes made are in full compliance with)

HENNIG
RUIZ &
SINGH

for budget and scope of work, the OMB Uniform Guidance Circular A-110 (incorporated by reference), statement of substantial involvement, conflict of interest disclosures and review requirements, intellectual property provisions, and an addendum to the federal assistance reporting checklist and instructions.

19. During the first and second years, JCAP received federal funding of $22,000,000.00 per year for the work described in the JCAP 1 proposal. During the third, fourth, and fifth years, JCAP received federal funding of $24,300,000.00 per year. Budgets for each of the projects within JCAP 1 were initially established, are contractually binding, and can only be changed pursuant to the Cooperative Agreement's change controls and OMB Circular A-110. A Level 1 change control contract amendment must have prior approval and be duly executed by DOE, per the Cooperative Agreement.

20. JCAP 1 supported more than 100 researchers from across Caltech and its partner institutions. JCAP 1 was governed by a Board of Directors, remade for JCAP 2 as the Governance Board. Following the Governance Board/Board of Directors is the Director. The Director's responsibility is to conduct Executive Committee (hereinafter "Excomm") meetings, provide budgets and financials to the JCAP 1 and JCAP 2 project investigators, and to manage both the JCAP 1 and the JCAP 2 projects. Furthermore, the Director is also the lead Principal Investigator for the JCAP 1 and JCAP 2 projects. Defendant Dr. Atwater is a Professor of Applied Physics and Material Sciences at Caltech and has served as Director of the JCAP 1 as of October 1, 2014 and is also the current JCAP 2 Director. The financial, accounting, administrative, and record keeping functions of the JCAP 1 and JCAP 2 projects at Caltech are performed under the direction and supervision of Caltech's Division of CCE of which Defendant Dr. Barton has served as the CCE Division Chair from June 2009 to the present.

21. JCAP 1 is composed of eight (8) projects that conduct research on various different aspects of artificial solar-fuels generation, including: (1) the Light

Capture and Conversion Project; (2) the Heterogeneous Catalysis Project; (3) the Molecular Catalysis Project; (4) the Catalyst and Photochemical Benchmarking Project; (5) the High-Throughput Experimentation Project; (6) the Molecular and Nanoscale Interfaces Project; (7) the Membrane and Mesoscale Assembly Project; and (8) the Scale-Up and Prototyping Project (collectively "the Projects"). Pursuant to the Cooperative Agreement, each of the Projects is led by a Project Leader and a Project Co-Lead that are responsible for research, spending, hiring, and the administration of their own respective project.

22. The Board of Directors initially appointed Relator to serve as JCAP 1's founding Director (the highest senior management position within JCAP 1). Relator served as JCAP 1's Director until January of 2013. In 2013, and while Relator was still JCAP 1's Director, JCAP 1 was audited by DOE's Office of Inspector General ("OIG") for compliance with all financial, management, and administrative obligations and contractual requirements. OIG's audit found no wrongdoing at JCAP 1. Relator was subsequently demoted to serve as JCAP 1's Scientific Director and Project Leader of the (1) Light Capture and Conversion Materials Project, (2) Co-Project leader of the Heterogeneous Catalysis Project, and (3) the Cognisant Professorial Faculty Member with fiduciary duty over the JCAP 1 Molecular and Nanoscale Interfaces Project.

23. The Board of Directors then appointed Dr. Carl A. Koval (hereinafter "Dr. Koval") to succeed Relator and serve as JCAP 1's Director until September 30, 2014.

24. On or around October 1, 2014, the JCAP 1 Board of Directors appointed Defendant Dr. Atwater to serve as JCAP 1's Director, and subsequently JCAP 2's Director. Relator is informed that Defendant Dr. Atwater continues to serve as JCAP 1 and JCAP 2's Director.

25. Prior to Defendant Dr. Atwater's appointment as JCAP 1 and JCAP 2's Director, JCAP 1 was making steady progress towards its mandated effort to

HENNIG
RUIZ &
SINGH

develop and demonstrate a device that inputs only water and sunlight to produce hydrogen and oxygen.

26.     Under Defendant Dr. Atwater's leadership as Director, Defendant Dr. Atwater has breached the Cooperative Agreement by failing to hold contractually required meetings with the JCAP Executive Committee, failing to provide Project Leaders with consultation on their respective budgets, failing to provide transparency on what has been reported to DOE, and possibly failing to provide the JCAP 1 Board of Directors and DOE with accurate quarterly actuals vs. projected spending statements as required in the Cooperative Agreement.

27.     In or around October of 2014, Defendant Dr. Atwater, while serving as JCAP 1's Director, administratively enforced a hiring freeze and spending slow down on the Projects at JCAP, without obtaining prior approval and/or permission from JCAP 1's Board of Directors, the JCAP 1 Project leaders, JCAP 1 Executive Committee and/or DOE as required in the Cooperative Agreement and the associated JCAP OMP.

28.     Relator is informed, and on that basis alleges, that Defendant Dr. Atwater's hiring freeze and spending slow down constituted a change control in the form of a spending restriction. Furthermore, Defendant Dr. Atwater's spending restriction constituted a breach of the Cooperative Agreement between the DOE and Defendant Caltech, as well as the United States Executive Office's Uniform Guidance A-110–standards and requirements set forth for Federal grants and agreements between Federal agencies and institutions of higher education, hospitals, and other non-profit organizations–because Defendant Dr. Atwater executed a spending restriction without the required prior approval by DOE. Defendant Dr. Atwater certified that it would use the year's allocated federal funds towards the JCAP 1 project in accord with the scope, milestones, and schedule of the JCAP 1 Proposal. Instead, Defendant Dr. Atwater denied the Projects, along with their respective Project Leaders, the ability to spend the federal funds that had

HENNIG
RUIZ &
SINGH

1  been allocated by the Board of Directors, DOE, and Congress. Consequently, the

2  Projects were restricted in their ability to meet JCAP's congressional and DOE

3  milestones. All the JCAP 1 Projects adhered to the spending freeze by

4  administrative fiat from Defendant Dr. Atwater, except for Defendant Dr. Atwater's

5  own project, the Membrane and Mesoscale Assembly Project, which Defendant Dr.

6  Atwater exhausted its funds and later transferred and/or authorized in secret a

7  transfer of funding to eliminate the overrun of funds. Defendant Dr. Atwater's

8  actions had the effect of carrying over $5,500,000.00 of federal funds that should

9  have been used on congressionally approved work during the September of 2010 to

10  September of 2015 period, intentionally produced a positive balance of over

11  $5,500,000.00 that should have been used during the initially awarded five-year

12  period for JCAP 1.

13       29.    In or around November 2014, Defendant Dr. Atwater specifically

14  indicated to Relator, as JCAP's Scientific Director and Project Leader of the Light

15  Capture and Conversion Project, that no funds would be taken from the JCAP 1

16  projects. Nevertheless, Defendant Dr. Atwater took the funds that had been

17  withheld from the JCAP 1 project and used them in large part to instead perform

18  work on the JCAP 2 project, thereby billing the government for non-conforming

19  work on JCAP 1. Defendant Dr. Atwater's actions constituted change control

20  violations that are explicitly forbidden under the Cooperative Agreement as Project

21  Leaders need to authorize such change in the utilization of JCAP 1 project funds

22  and DOE needs to provide prior approval of such changes.

23     **B.**    **The Establishment of the JCAP 2 Project.**

24       30.    A new and separate FOA (DE-FOA-0001205) was announced on

25  November 25, 2014, by DOE. Then on December 29, 2014, the same consortium of

26  universities, including Defendant Caltech, applied for a separate federal award by

27  DOE for work on the JCAP 2 project (DE-SC0004993). Caltech was notified in

28  May 2015 that it would receive an award for $75,000,000.00 for a period of

performance for five (5) years from September 30, 2015, through September 30, 2020, through congressional appropriations for the JCAP 2 Proposal in response to FOA (DE-FOA-0001205). The primary technical goal of JCAP 2 is to develop scientific principles of heterogeneous catalysis to sustainably convert carbon dioxide into liquid transportation fuels (i.e., gasoline, methanol).

31. JCAP 2 is organized into four (4) research "Thrusts" (a grouping of researchers to develop scientific and technological advances to close major scientific gaps and help realize an integrated carbon dioxide reduction of solar-fuels energy), which include the following: Thrust 1 is called Electrocatalysis, with a key focus to discover and understand heterogeneous carbon dioxide reduction reaction and oxygen evolution reaction electrocatalysis; Thrust 2 is called Photocatalysis and Light Capture, with a key focus in discovering and understanding of carbon dioxide reduction and oxygen evolution photocatalysis, as well as the development and understanding of light harvesting photonic architectures; Thrust 3 is called Materials Integration into Components, with a key focus on developing and understanding integrated catalysis/light absorber assemblies; and Thrust 4 is called Modeling, Test-Bed Phototyping, & Benchmarking, with a key focus on modeling and simulating of device parameters and test-bed architectures (collectively referred to as "Thrusts"). These four Thrusts are unrelated to, and separately funded, from JCAP 1's eight (8) projects.

32. The funding instrument (MOD006) used for JCAP 2 modifies the Cooperative Agreement and provides funds towards JCAP 2's proposed milestones and scope of work. Furthermore, MOD006 extends the period of performance for JCAP 1 through September 30, 2020, to allow completion of JCAP 1 work with unspent JCAP 1 funds as of September 30, 2015.

33. JCAP 1 and JCAP 2 are two distinct projects that have separate and distinct statements of work, milestones, staff, initial award dates, and indirect cost rates. Furthermore, JCAP 1 and JCAP 2 funding is derived from two distinct line

items in DOE's congressionally approved budget. Defendants were explicitly told by DOE not to use any JCAP 1 project funds unexpended by September 30, 2015 to perform work on the JCAP 2 project statement of work.

**C.     Change Controls and Restrictions in the Cooperative Agreement.**

34.     The JCAP 1 Change Policy approved by the JCAP 1 Board of Directors and by DOE, contained in a July 2013 letter from JCAP Director Dr. Koval, states the following:

> The decision to terminate or change research direction for one or several of the tasks within a project is initiated by a Project Leader and/or by a Department Head. The JCAP Director, in consultation with the Executive Committee, will finalize the decision. Any resource can be used to support the decision, including a visiting committee of outside experts, input from the JCAP Advisory Boards, or solicited written reviews of publications, papers, and other documents. It is the responsibility of the Director to ensure that the decision is made carefully and is well documented. Each termination/redirection decision will be summarized in a written report, and JCAP will notify the DOE under the Change Control Guidelines.

Furthermore, the Cooperative Agreement contains a DOE OMP that specifies the process for the change controls.

35.     The Cooperative Agreement, signed in Fall of 2010, incorporates the OMB Circular A-110 by reference, which provides that changes in budget and/or scope require advance approval by DOE and the JCAP 1 Board of Directors.

36.     Project Leads receive project funding allocations as specified in the revised JCAP 1 budget.

37.     The Cooperative Agreement requires quarterly technical and financial reporting. Furthermore, the JCAP 1 Board of Directors meets quarterly and is chaired by Defendant Dr. Stolper. The JCAP 1 Excomm meets quarterly and formulates and approves all project resource allocations and project scope changes in accord with the contractually required and duly executed JCAP 1 OMP.

38.     The Cooperative Agreement provides "a list of examples of Level 1 Programmatic Change Control Proposals requiring prior approval from DOE: 3. Changes in funding for the current JCAP Project Groups (e.g. Molecular-Nanoscale

HENNIG
RUIZ &
SINGH

Interfaces, Theory, Instrumentation, Heterogeneous Catalysis, etc.) of more than 20% per year of $500,000 per year, whichever is smaller".

39. Furthermore, the Cooperative Agreement provides that:

> All Programmatic Change Proposals shall be communicated by the Caltech Institutional Official ("IO"), via email, to the DOE Contracting Officer and the cognizant DOE Program Manager in a timely manner…The DOE Contracting Officer will then transmit the formal DOE approval, via email, to the Caltech IO and JCAP Director within…thirty (30) days of the request changes under items 2-4 below. The results of approved Level 1 and Level 2 programmatic change proposals must be included in the annual report documents.

Defendants failed to abide by the change controls requirements specified in the Cooperative Agreement and documents incorporated by reference (including the statement of substantial involvement).

## V.     THE FEDERAL FALSE CLAIMS ACT.

40. The Federal FCA reflects Congress's intent to "enhance the Government's ability to recovery losses as a result of fraud against the Government." S. Rep. No. 99-345, at 1 (1986), available at 1986 U.S.C.C.A.N. 5266. As relevant here, the FCA establishes civil penalties and treble damages liability to the United States for an individual or entity that:

(A)     knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; or

(B)     knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim . . ..

31 U.S.C. § 3729(a)(1).

41. Under the FCA, the terms "knowing" and "knowingly"

(A)     means that a person, with respect to information–

(i)     has actual knowledge of the information;

(ii)     acts in deliberate ignorance of the truth or falsity of the information; or

(iii)     acts in reckless disregard of the truth or falsity of the

HENNIG
RUIZ &
SINGH

information; and

        (B)   require no proof of specific intent to defraud.

*Id.* § 3729(b)(1).

## VI. GENERAL ALLEGATIONS.

42.    At all times relevant to this Complaint, Relator alleges, based upon Relator's employment by Defendant Caltech, positions as former JCAP 1 Director, Scientific Director, ex officio member of the JCAP 1 Executive Committee, a Project Leader of JCAP 1, and Internal PI for Thrusts 1, 2, and 3 of JCAP 2, and first-hand knowledge of: Defendants Caltech, Dr. Atwater, Dr. Stolper, and Dr. Barton's business practices; Defendants' knowing, false, and intentional diversion, cross-billing, and misallocation of congressionally appropriated funds from the JCAP 1 project onto the JCAP 2 project; Defendants' false certification and failure to disclose conflicts of interest with the JCAP 1 and/or JCAP 2 projects; Defendants' steering of Federal Government funds to perform unapproved and/or unauthorized work that would in part provide personal and/or institutional financial benefit; and Defendants making material, substantive, and/or false statements in the JCAP 2 Proposal that have led to non-conforming work and fraudulent billing to the Federal Government.

43.    By knowingly diverting, cross-billing, and misallocating Federal funds intended to fund JCAP 1 and JCAP 2's government-sponsored projects, Defendants defrauded the United States of money, in violation of laws and regulations applicable to such claims.

### A. Unauthorized Accumulation of JCAP 1 Funds.

44.    Relator is informed, and on that basis alleges, that from October 2014 to the present, Defendant Dr. Atwater abruptly limited access to JCAP 1's financial information. Relator is further informed, and on the basis alleges, that Defendant Dr. Atwater has not held quarterly contractually mandated ExComm meetings, and

-18-

HENNIG
RUIZ &
SINGH

has withheld budget and financial information from Project Leaders and JCAP 1 management personnel, including the Scientific Director and JCAP 1 ExComm who have approval and fiduciary obligations per the Cooperative Agreement and JCAP 1 DOE OMP.

45.     From on or around October 2014 through September 2015, Defendant Dr. Atwater has administratively prohibited spending of JCAP 1 funds against congressionally appropriated, DOE approved, and duly allocated JCAP 1 funding allocations. Relator is informed, and on that basis alleges, that Defendant Dr. Atwater's spending restriction forced an accumulation of $5,500,000.00 up until September 30, 2015. Relator is further informed, and on that basis alleges, that the DOE has not been informed in writing about Defendant Dr. Atwater's funding restrictions, and/or the ultimate use of these funds.

**B.      Fraudulent Cross-Billing of the JCAP 2 Project Work to the JCAP 1 Project.**

46.     Relator is informed, and on that basis alleges, that in or around March 2016, Defendant Dr. Atwater reallocated the $5,500,000.00 of administratively mandated JCAP 1 accumulated funding and used such funding in part to bill costs for JCAP 2 work that is nonconforming nor approved in the JCAP 1 statement of work. Relator is further informed, and on that basis alleges, that no budget, statement of work, notification, approval, or contract modification of the Cooperative Agreement was ever provided to or approved by DOE or Congress regarding the change in disposition of these funds.

47.     Dr. Atwater instructed JCAP 1 personnel and/or researchers to bill work for the JCAP 2 project, through the JCAP 1 funds, prior to the commencement of the JCAP 2 project. For example, in one instance Dr. Slovodan Mitrovic ("Dr. Mitrovic"), a scientist for the JCAP 1 project, left the JCAP 1 project in August of 2015. Relator is informed from an email sent by Dr. Mitrovic to Relator on June 20, 2016, in which Defendant Dr. Atwater assigned Dr. Mitrovic

1   to spend forty (40) percent of his time on "topics that are aligned with the
2   milestones of JCAP [2]," which was before the commence of JCAP 2.

### C. Unauthorized Spending of JCAP 1 Carry-Forward Funding.

4   48.   In or around February 2016, Defendant Dr. Atwater reassigned the
5   withheld JCAP 1 funds in their entirety, and unilaterally reallocated and redirected
6   the funds without disclosing to the Project Leaders or to DOE where the funds were
7   being reallocated. Relator is informed, and on that basis alleges, that Defendant Dr.
8   Atwater breached the change controls clause of the Cooperative Agreement that
9   specifically prevents this type of action.

10   49.   Relator is informed, and on that basis alleges, that JCAP 2 funding and
11   withheld JCAP 1 funding was not allocated to most projects until March 2016 (six
12   (6) months into the fiscal year). Consequently, uncontrolled and unmonitored
13   spending of these federal funds, approximately $4,000,000.00 to $5,000,000.00, has
14   occurred during 2015 and 2016. Furthermore, there has not been approval from any
15   Intern PI or Project Leader of allowable expenses within the requisite ninety (90)
16   day period, thereby breaching the Cooperative Agreement and general federal
17   award processes as specified in the C.F.R., and fraudulently billing the government
18   for non-conforming work, materials, supplies, travel, and other expenses on both
19   the JCAP 1 and JCAP 2 projects, as well as for work performed for private
20   corporations with license agreements with Caltech.

21   50.   Relator is informed, and on that basis alleges, that Defendant Dr.
22   Atwater has failed to distribute the full proposal for JCAP 2, which contains the
23   statement of work. Project Leaders and Intern PIs, such as Relator, have no ability
24   to properly assign materials, supplies, or labor to the JCAP 1 and/or JCAP 2
25   projects. Additionally, Defendant Dr. Atwater has presumably billed corporate
26   projects, such as work for Panasonic, onto the JCAP 1 and JCAP 2 funds.

27   51.   In or around March of 2016, Relator made a formal complaint relating
28   to Defendant Dr. Atwater engaging in the above-described conduct and made a

HENNIG
RUIZ &
SINGH

written request for a breakdown of the available funds for Relator's three (3) of JCAP 1's projects, which Relator has spending authority and a fiduciary responsibility at Caltech. Relator has yet to receive such breakdown. This request was denied by Defendant Dr. Atwater and Relator was instead provided with a summary spreadsheet that indicated that the balance of three (3) JCAP 1 projects that Relator oversaw was for approximately $1,600,000.00. Furthermore, Defendant Dr. Atwater informed Relator that Defendant Dr. Atwater had unilaterally required Relator to bill the Federal Government for work under the Thrusts for JCAP 2 using $1,420,000.00 in withheld funds from the JCAP 1 project. Relator was ultimately told in writing by Defendant Dr. Barton that Relator needs to cease asking questions about this funding or the decision whatsoever.

### D. Undeclared Conflict of Interest.

52. The Cooperative Agreement states that "JCAP is required to provide to the DOE Contracting Officer, all positive [conflict of interest] disclosures for the following JCAP Key Personnel: a) the seven (7) members of the JCAP Board of Directors and b) the members of the Executive Committee, regardless of title."

53. Defendant Caltech has a licensing/royalty agreement with both Dow Chemical (hereinafter "Dow") and Alta Devices in the area of solar energy conversion materials. Some of the revenue received by Caltech under the licensing agreement returns some revenue to inventors, including Defendant Dr. Atwater, and also returns some revenue to Defendant Caltech. Relator alleges that Defendant Caltech has a direct conflict of interest as Defendant Caltech's licensing/royalty agreement with Dow and Alta Devices and the JCAP 1 and JCAP 2 projects are pursuing work that could directly benefit and enhance, the products, markets, and revenues realized by Alta Devices.

54. Defendant Dr. Atwater is a founder and a chief technical advisor for Alta Devices. Relator is informed, and on that basis alleges, that Defendant Dr. Atwater has failed to disclose and falsely certified that he had no conflicts of

HENNIG
RUIZ &
SINGH

interest with both the JCAP 1 and JCAP 2 projects. However, Defendant Dr.

Atwater has a conflict of interest with the JCAP 1 and JCAP 2 projects as Alta

Devices' own website states that Alta Devices, a solar energy company, "holds

world records for energy conversion efficiency and has received funding from

Kleiner Perkins Caufield & Byers, August Capital, Crosslink Capital, AIMco, GE,

Dow, and others." Furthermore, in 2016, Alta Devices broke the dual-junction cell

efficiency world record at 31.6%." Dr. Atwater took funds from JCAP1 and

expended such funds for work utilizing materials to which Alta Devices has the

exclusive license from Caltech to manufacture (materials used for solar

conversion). Relator alleges that Defendant Dr. Atwater has a direct conflict of

interest as to Alta Devices and the JCAP 1 and JCAP 2 projects because Defendant

Dr. Atwater has reallocated and steered JCAP 1 funds and is pursuing work directly

benefiting Alta Devices and thus its investors, such as Dow.

55.     Defendant Dr. Barton serves on the Materials Advisory Committee of

the Board of Directors of DowDuPont, Inc. Defendant Barton was elected to serve

on the Dow Board of Directors in 1993. Relator is informed, and on that basis

alleges, that Defendant Barton has failed to disclose and falsely certified that she

had no conflicts of interest with the JCAP 1 and JCAP 2 projects. Dr. Barton

authorized the reallocation of funds for JCAP 1 to instead support work on JCAP 2,

which is an area in which Dow has a direct business interest. However, Defendant

Dr. Barton has a conflict of interest with the JCAP 2 project as Alstom's, a French

multinational company, website states that "Alstom and Dow dedicate new pilot

plant to capture [carbon dioxide]." Relator alleges that Defendant Dr. Barton has a

direct conflict of interest as the JCAP 2 Thrust and the redirected JCAP 1 funding

are being steered to produce work on carbon dioxide reduction utilization that will

benefit Dow. The reallocated JCAP 1 funds were additionally steered to support

work that directly benefited Alta Devices in which Dow is in an investor.

///

HENNIG
RUIZ &
SINGH

**E.    Unallowable Reimbursements for Travel Costs.**

56.    Relator is informed, and on that basis, alleges that Dr. Atwater has engaged in the practice of billing unallowable travel costs to the JCAP 1 and JCAP 2 projects. For example, a research assistant by the name of Emily D. Kosten ("Kosten"), was a researcher in the Atwater Research Group, led by Defendant Dr. Atwater. Kosten was never listed as personnel/staff on the JCAP 1 award nor JCAP 1 support acknowledged in any publications. Nevertheless, Kosten was reimbursed through JCAP 1 funding for $31.67 for dinner on travel on April 20, 2014 (expenditure ID: 31391273). Furthermore, Kosten worked on projects and published two articles that were performed in collaboration with Dow and Alta Devices.

**F.    Unallowable Indirect Costs on Instrument Purchases.**

57.    Defendant Dr. Atwater authorized the procurement of various items used to fabricate instrumentation. The items were categorized as materials and supplies, resulting in billing associated with indirect costs to the Federal Government. However, these items were actually part of a fabrication of instrumentation having a cumulative cost of greater than $5,000, and thus should have been classified as instrumentation with no associated indirect costs.

58.    The Femto Second Laser System, with the cost of over $1,000,000, was assembled and procured under the direct supervision of Defendant Dr. Atwater. Defendant Dr. Atwater also assembled and procured a Spectroscopic Ellipsometer having a cost of over $250,000.00. Both the Femto Second Laser System and the Spectroscopic Ellipsometer were primarily used for non JCAP 1 nor JCAP 2 projects, and on these other projects Defendant Dr. Atwater also served as the Principal Investigator. Furthermore, Defendants Caltech and Dr. Atwater assembled and procured other materials with JCAP 1 and JCAP 2 funds to advance corporate sponsored-projects for which Defendants Dr. Atwater and Caltech would benefit financially.

HENNIG
RUIZ &
SINGH

### G.  Willful Misallocation of Funds.

59.    2 C.F.R. 200.308(h)(1) provides that "[t]he recipient must provide revised budget information to the Federal agency [(in this case DOE)] if there are any significant changes in the size or scope or cost of the project or in the originally negotiated total estimated cost of the project period." Relator is informed that Defendant Dr. Atwater knowingly, falsely, and intentionally misrepresented a budget for JCAP 1 for $300,000.00 less than was contractually obligated.

60.    Relator is informed, and on that basis alleges, that Defendant Dr. Atwater overspent funds for his JCAP 1 Mesoscale project, which Defendant Dr. Atwater is a leader of, and secretly cleared it by a funds transfer from other JCAP 1 under-expended accounts.

### H.  False Records or Statements.

61.    Relator is informed, and on that basis alleges, that Defendants are falsifying financial statements, and is maintaining two sets of books with one book containing falsified financial statements and the other book containing financial statements that evidence Relator's allegations contained in this complaint. Defendants' falsified financial statements aim to conceal: (1) the use of JCAP 1 and/or JCAP 2 federal funds to fund unapproved work; (2) the inappropriate, incorrect, and contractually obligated financial statements; (3) costs that were greater than the authorized amounts by DOE and/or the Project Leaders of the JCAP 1 Projects and the JCAP 2 Thrusts; and (4) more than $200,000.00 in hidden charges that Defendant Dr. Atwater refuses to let Relator and other Project Leaders view, much less a breakdown, of such charges.

62.    By Relator's calculations, there were over $3,000,000.00 in Relator's three project accounts, instead, a summary spreadsheet provided by Defendant Dr. Atwater to Relator only shows that the accounts have $1,600,000.00.

63.    Relator is informed, and on that basis alleges, that there are systematic financial irregularities occurring throughout JCAP 1 and JCAP 2 at the direction of

Defendants.

64.     Defendant Atwater made false material statements in the application submitted to DOE for JCAP 2 funding. Relator is informed, and on that basis alleges, that Defendant Dr. Atwater never intended to reach, much less provide funding, the milestones expressly indicated in the JCAP 2 proposal. Relator is further informed, and on that basis alleges, that Dr. Hans Lewerenz ("Dr. Lewerenz") was sent back to Germany expeditiously, despite his key role stated in the JCAP 2 proposal. Defendant Dr. Atwater did not provide Dr. Lewerenz with any JCAP 2 funding for Dr. Lewerenz to perform his work. Dr. Lewerenz wrote white papers that describe his five-year timeline for work on JCAP 2, which were incorporated explicitly into the JCAP 2 proposal and formed some key work that was in part the basis for the proposal being funded $75,000,000 over the five (5) years approved by DOE for the JCAP 2 work. Relator is informed, and on that basis alleges, that Defendant Dr. Atwater did not intend, allow, and/or enable the execution of Dr. Lewerenz's work with the JCAP 2 funding. The reallocation of funding that was contained in the JCAP 2 accepted project proposal, the statement of work, and the approved DOE budget were in direct violation of the change controls in force for JCAP 2.

65.     Defendant Dr. Atwater violated the terms of the JCAP 1 and JCAP 2 proposals as JCAP 1 and JCAP 2 Director, as he had stated that he would absolve himself from all other management duties of projects outside JCAP 1 and JCAP 2 and subsequently failed to do so. For instance, Defendant Dr. Atwater continues to serve as the Strategic Director and Partner University Lead for the Center of Quantum Energy and Sustainable Solar Technologies ("QESST"). Furthermore, Defendant Dr. Atwater violated the JCAP 1 and JCAP 2 proposals as he had stated that he would devote more than 80 percent of his effort to being the JCAP 1 and JCAP 2 Director; once again, Defendant Dr. Atwater failed to do so. In one instance in or around June 2015, Defendant Dr. Atwater testified before the Committee on

Science, Space, and Technology's Subcommittee on Energy of the United States House of Representatives and declared his federal support for all projects, including JCAP 1 and JCAP 2 as well as others. In doing so, Relator is informed, and on that basis alleges, that nearly 50 percent of Defendant Dr. Atwater's efforts was committed to other projects in conflict with his full-time commitment as the Director of JCAP 1 and JCAP 2.

## I.    Retaliation Against Relator.

66.    Relator has been subjected to continuous retaliation immediately prior to Relator's Faculty hearing committee meeting on September 1, 2016, in which Relator addressed JCAP 1 and JCAP 2 related issues of concern. Defendants Caltech and Dr. Barton retaliated against Relator in the form of removing him from oversight of the Chen-Huang Seminar Series endowment on August 31, 2016. Defendants Caltech and Dr. Barton did not convene such a seminar for the entire 2016 year. The endowed seminar serves as a platform for Relator to meet with prominent thought leaders in the filed of sustainable energy. Relator has since been restricted from being able to widen his reputation. Such actions by Defendants Caltech and Dr. Barton resulted in Relator's loss of job responsibility, reputation, and outside consulting income derived from sustainability research and education efforts. Defendant Barton also established and mainted an unsafe and hostile workplace involving employment threats and unmitigatated exposure to toxic and carcinogenic chemicals to Relator, as well as to Relator's support personnel and staff.

## COUNT ONE

### Violations of Federal False Claims Act, 31 U.S.C. § 3729, *et seq.*

67.    Relator incorporates and realleges all the facts and allegations set forth above.

68.    This Count is brought by Relator in the name of the United States

HENNIG
RUIZ &
SINGH

under the *qui tam* provisions of 31 U.S.C. § 3730 for Defendants' violations of 31 U.S.C. § 3729 against Defendants Caltech, Dr. Atwater, Dr. Stolper, and Dr. Barton.

69.     Defendants Caltech, Dr. Atwater, Dr. Stolper, and Dr. Barton by virtue of the above-described acts, among others, knowingly or in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, made, used, caused to be made or caused to be used, false or fraudulent records and statements to divert, cross-bill, and/or misallocate Federal funds, in violation, *inter alia*, of 31 U.S.C. § 3729(a)(1).

70.     Defendants Caltech, Dr. Atwater, Dr. Stolper, and Dr. Barton defrauded the United States by knowingly, falsely, and intentionally diverting, cross-billing, and misallocating congressionally appropriated funds to support unapproved and unauthorized work in part for their benefit.

71.     By virtue of the above-described acts, Defendants knowingly made or used false statements to avoid or conceal obligations to the United States.

72.     By virtue of the above-described acts, Defendants knowingly, falsely, and intentionally certified and/or failed to disclose conflicts of interests with the JCAP 1 and/or JCAP 2 projects.

73.     The false or fraudulent claims to the United States were material.

74.     Plaintiff United States, being unaware of the falsity of the claims and/or statements made by Defendants, and in reliance on the accuracy thereof, paid and may continue to pay for and support Defendants' unapproved and unauthorized research projects.

75.     The United States has sustained damages because of each of Defendants' actions.

WHEREFORE, Realtor requests relief as hereafter provided.

///

///

HENNIG
RUIZ &
SINGH

## COUNT TWO

### Retaliation in Violation of 31 U.S.C. § 3730(h)

### (Against Defendant Caltech)

76. As a separate and distinct cause of action, Relator complains and realleges all the allegations contained in this Complaint and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations that are inconsistent with this cause of action. This cause of action is brought against Defendant Caltech.

77. During all relevant times, Relator was an employee of Defendant Caltech.

78. During his employment, Relator engaged in activity subject to the protections of this statute by inquiring as to the fraudulent and illegal conduct described herein in furtherance of his research and investigation for this *qui* tam action.

79. As a result of the protected activity described herein, Plaintiff was subjected to retaliation by Defendant Caltech including, but not limited to, differential treatment, disciplinary action, and adverse actions by Defendant Caltech in the form of removing Relator from an endowed seminar series. Defendant Caltech retaliated against for Relator's protected activity as stated herein.

80. Defendant Caltech's retaliation against Relator in violation of 31 U.S.C. § 3730(h) was a substantial factor in causing Relator's harm.

WHEREFORE, Realtor requests relief as hereafter provided.

## PRAYER FOR RELIEF

WHEREFORE, Relator respectfully prays that with respect to violations of the Federal False Claims Act, Count One, that judgment be entered against Defendant as follows:

///

HENNIG
RUIZ &
SINGH

a. That Defendants Caltech, Dr. Atwater, Dr. Stoper, and Dr. Barton be found to have violated and be enjoined from future violations of the Federal False Claims Act, 31 U.S.C. §§ 3729-32;

b. That Defendants Caltech, Dr. Atwater, Dr. Stoper, and Dr. Barton pay not less than $5,000 and not more than $10,000.00 for each violation of 31 U.S.C. § 3729, plus three times the amount of damages the United States has sustained because of Defendants' actions;

c. That Relator be awarded the maximum "Relator's share" allowed pursuant to 31 U.S.C. § 3730(d), and all relief to which Relator is entitled to pursuant to statute, including costs and attorney's fees; and

d. That the United States and the Relator be awarded such other relief as the Court deems just and proper.

WHEREFORE, Relator respectfully prays for relief and judgment against Defendants Caltech as to his Second Cause of Action, as follows:

a. Reinstatement to the same status Relator would have held but for the unlawful retaliation;

b. Double the amount of back pay;

c. Interest on back pay;

d. Front pay;

e. Reasonable attorney's fees and costs; and

f. Any other relief necessary to make Relator whole; and

///
///
///
///
///
///

HENNIG
RUIZ &
SINGH

d.  That the United States and the Relator be awarded such other relief as the Court deems just and proper.

Dated: July 9, 2018                    Respectfully Submitted,


/ s / Rob Hennig

Rob Hennig (Cal. State Bar No. 174646)
Samuel M. Brown (State Bar No. 308558)
HENNIG RUIZ & SINGH
3600 Wilshire Boulevard, Suite 1908
Los Angeles, CA 90067
(213) 310-8301 (office)
(213) 310-8302 (fax)
rob@employmentattorneyla.com
sam@employmentattorneyla.com

*Attorney for Relator Nathan S. Lewis*

HENNIG
RUIZ &
SINGH

## DEMAND FOR JURY TRIAL

Relator, on behalf of himself and the United States, demands a jury trial on all claims alleged herein. Plaintiff demands trial by jury in this matter.


Dated: July 9, 2018                    Respectfully Submitted,


                                       / s / Rob Hennig

                                       Rob Hennig (Cal. State Bar No. 174646)
                                       Samuel M. Brown (State Bar No. 308558)
                                       HENNIG RUIZ & SINGH
                                       3600 Wilshire Boulevard, Suite 1908
                                       Los Angeles, CA 90067
                                       (213) 310-8301 (office)
                                       (213) 310-8302 (fax)
                                       rob@employmentattorneyla.com
                                       sam@employmentattorneyla.com

                                       *Attorney for Relator Nathan S. Lewis*

HENNIG
RUIZ &
SINGH