**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:18-cv-05964-CAS(RAOx) | Date | October 28, 2019 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA EX REL. NATHAN S. LEWIS v. CALIFORNIA INSTUTE OF TECHNOLOGY ET AL. | | |

Present: The Honorable     CHRISTINA A. SNYDER

| Catherine Jeang | Laura Elias | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:     Attorneys Present for Defendants:

Samuel Brown     Moez Kaba

Joseph Reiter

Attorneys Present for
Real Party In Interest
Abraham Meltzer

**Proceedings:**     DEFENDANTS' MOTION TO DISMISS COMPLAINT
(Dkt. [ 21 ], filed September 16, 2019)

PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT
OF OPPOSITION TO MOTION TO DISMISS
(Dkt. [ 27 ], filed October 2, 2019)

## I. INTRODUCTION

Relator Nathan S. Lewis ("the Relator") filed this *qui tam* action, under seal, against defendants California Institute of Technology ("Caltech"), Dr. Harry A. Atwater ("Dr. Atwater"), Dr. Edward M. Stolper ("Dr. Stolper"), and Dr. Jacqueline K. Barton ("Dr. Barton") on July 9, 2018. Dkt. 1 ("Compl."). The operative complaint asserts claims for: (1) violation of the False Claims Act ("FCA"), 31 U.S.C. § 3729 et seq., against all defendants; and (2) retaliation in violation of the FCA, 31 U.S.C. § 3730(h), against Caltech. Id.

Following a period of investigation, the United States of America declined to intervene on June 19, 2019. Dkt. 13. Defendants thereafter moved to dismiss the Relator's complaint on September 16, 2019. Dkt. 21 ("Mot."). The relator filed an opposition on October 2, 2019. Dkt. 28 ("Opp."). Defendants filed a reply on October 11, 2019. Dkt. 30 ("Reply").

The Court held a hearing on October 28, 2019. Having carefully considered the parties' arguments, the Court finds and concludes as follows.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-05964-CAS(RAOx) | Date | October 28, 2019 |
| --- | --- | --- | --- |
| Title | UNITED STATES OF AMERICA EX REL. NATHAN S. LEWIS v. CALIFORNIA INSTUTE OF TECHNOLOGY ET AL. | | |

## II.    BACKGROUND

### A.    The Parties

The Relator is an expert in the fields of solar fuels and solar chemicals.  Compl. ¶ 10.  Caltech has employed the Relator since 1988, during which time the Relator has served in several positions, including as a Professor of Chemistry.  Id.  Until August 31, 2016, Relator also previously oversaw Caltech's Chen-Huang Seminar Series.  Id. ¶ 66.

Caltech is a private non-profit teaching and research university that maintains its primary campus in Pasadena, California.  Compl. ¶ 13.  In addition to serving as an academic, degree-conferring institution, Caltech, through its various divisions and departments, conducts scientific research.  Id.  Caltech often does so with the assistance of awards from the United States federal government.  Id.

Dr. Atwater is a Professor of Applied Physics and Material Sciences at Caltech.  Compl. ¶ 8.  He also conducts scientific research in connection with his employment at Caltech.  Id.  In addition to his work at Caltech, Dr. Atwater founded Alta Devices, a solar energy company.  Id. ¶ 54.  Dr. Atwater serves as Alta Devices's chief technical advisor.  Id.

Dr. Stolper is a Professor of Geology at Caltech.  Compl. ¶ 9.  In addition to serving as a professor and researcher, Dr. Stolper serves as Senior Advisor to Caltech's Vice President for Development and Institute Relations and previously served as Caltech's Provost between April 2007 and September 2017.  Id.

Dr. Barton is a Professor of Chemistry at Caltech, currently serving as Caltech's Chair of the Division of Chemistry and Chemical Engineering ("CCE").  Compl. ¶ 16.  In addition to her work at Caltech, in 1993, Dr. Barton was elected to serve on the Board of Directors of Dow Inc. ("Dow").  Id. ¶ 55.  Dr. Barton also serves on Dow's Materials Advisory Committee.  Id.

### B.    The Department of Energy Establishes the Joint Center for Artificial Photosynthesis

The United States Department of Energy ("the DOE") maintains an innovation hub known as the Joint Center for Artificial Photosynthesis.  Compl. at 3.  The Relator's complaint concerns alleged wrongdoing related to two projects awarded to Caltech pursuant to this program: "JCAP 1" and "JCAP 2."  Id.

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:18-cv-05964-CAS(RAOx) | Date | October 28, 2019 |
| Title | UNITED STATES OF AMERICA EX REL. NATHAN S. LEWIS v. CALIFORNIA INSTUTE OF TECHNOLOGY ET AL. | | |

### 1.     The DOE Awards JCAP 1 to Caltech

The DOE announced an opportunity for funding for an "Energy Innovation Hub – Fuels from Sunlight" on December 22, 2009.  Compl. ¶ 17.  On September 30, 2010, the DOE thereafter awarded JCAP 1, a federal award totaling $116 million, to several educational and research institutions, selecting Caltech as the lead institution.  Id.  JCAP 1's $116 million in total funding was to be distributed between September 30, 2010, through September 30, 2015, as follows: $22 million per year for JCAP 1's first and second years, and $24.3 million per year for JCAP 1's third, fourth, and fifth years.  Id. ¶¶ 17, 19.

The purpose of JCAP 1 is to "create a low-cost generator to make fuel from sunlight ten (10) times more efficiently than plants, with initial emphasis on the production of hydrogen from water and sunlight."  Compl. ¶ 13.  More than one hundred researchers from Caltech and its partner institutions supported JCAP 1.  Id. ¶ 20.  The project consists of eight sub-projects which aim to further research regarding the generation of artificial solar fuels, including: "(1) the Light Capture and Conversion Project; (2) the Heterogeneous Catalysis Project; (3) the Molecular Catalysis Project; (4) the Catalyst and Photochemical Benchmarking Project; (5) the High-Throughput Experimentation Project; (6) the Molecular and Nanoscale Interfaces Project; (7) the Membrane and Mesoscale Assembly Project; and (8) the Scale-Up and Prototyping Project.  Id. ¶ 21.  Each project is led by a Project Leader and a Project Co-Lead that have responsibilities for "research, spending, hiring, and the administration of their own respective project."  Id.

### 2.     The DOE Awards JCAP 2 to Caltech

The DOE announced a separate and additional opportunity for funding on November 25, 2015, aimed at developing "scientific principles of heterogenous catalysis to sustainably convert carbon dioxide into liquid transportation fuels (i.e., gasoline, methanol)."  Compl. ¶ 30.  The same institutions that received the JCAP 1 award, again led by Caltech, applied for this subsequent funding opportunity on December 29, 2014.  Id. ¶ 30.  In May 2015, the DOE thereafter awarded JCAP 2, a federal award totaling $75 million, to Caltech.  Id.

JCAP 2 is organized into four groups of researchers known as "Thrusts."  Compl. ¶ 31.  Thrusts 1, 2, 3, and 4 are respectively known as "Electrocatalysis"; "Photocatalysis and Light Capture"; "Materials Integration into Components"; and "Modeling, Test-Bed Phototyping, & Benchmarking."  Id.  The period for performance for JCAP 2 is September 30, 2015 through September 30, 2020.  Id. ¶ 30.  The funding instrument for JCAP 2

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-05964-CAS(RAOx) | Date | October 28, 2019 |
|----------|-------------------------|------|------------------|
| Title | UNITED STATES OF AMERICA EX REL. NATHAN S. LEWIS v. CALIFORNIA INSTUTE OF TECHNOLOGY ET AL. | | |

extends JCAP 1's period of performance through September 30, 2020 "to allow completion of JCAP 1 work with unspent JCAP 1 funds as of September 30, 2015." Compl. ¶ 32. Congress appropriates funding for JCAP 1 and JCAP 2 as separate line items in the DOE's budget. Id. ¶ 33. Accordingly, the DOE "explicitly told . . . [defendants] . . . not to use any JCAP 1 project funds unexpended by September 30, 2015 to perform work on the JCAP 2 project statement of work." Id.

### 3.    Governance and Oversight of the JCAP Project

JCAP 1's Board of Directors, led by the Director, governed JCAP 1, and the Director was tasked with conducting Executive Committee meetings, providing budgets to project investigators, managing JCAP 1's day-to-day operations, and serving as JCAP's 1 principal investigator. Compl. ¶ 20. Caltech's CCE, led by Dr. Barton, performed the financial, accounting, administrative, and record keeping functions for both JCAP 1 and JCAP 2. Id. Following the DOE's award of JCAP 2 to Caltech, the Board of Directors was restyled as the Governance Board. Id.

The JCAP Project and Cooperative Agreement "serves as the agreement mechanism" that governs Caltech's roles and responsibilities.[1] Compl. ¶ 18; see also Dkt. 27-1, Exhibit 1 ("Cooperative Agreement"). The Cooperative Agreement contains provisions regarding the scope of contemplated work, statement of substantial involvement, requirements for reviewing and disclosing conflicts of interest, and intellectual property rights. Id. For example, the Cooperative Agreement requires advance approval from both the DOE and the JCAP 1 Board of Directors of any changes in JCAP 1's budget or scope of work. Id. ¶ 35. The Cooperative Agreement also requires quarterly technical and financial reporting as well as disclosures of any conflicts of interests

---

[1]    In connection with the Relator's opposition to defendant's motion to dismiss, the Relator requests judicial notice of: (1) the JCAP Project and Cooperative Agreement; and (2) the Statement of Substantial Involvement. Dkt. 27. Defendants did not file an opposition to the Relator's request. See C.D. Cal. L.R.7–12 ("The failure to file any required document, or the failure to file it within the deadline, may be deemed consent to the granting or denial of the motion[.]"). Moreover, "[i]t is also proper to take judicial notice of an agreement to which a government agency is a party." Brien v. J.P. Morgan Chase Bank, N.A., No. 2:10-cv-00374-DMG-MAN, 2010 WL 11597806, at *1 (C.D. Cal. July 9, 2010). Accordingly, the Court **GRANTS** the Relator's request for judicial notice.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-05964-CAS(RAOx) | Date | October 28, 2019 |
|----------|-------------------------|------|------------------|
| Title | UNITED STATES OF AMERICA EX REL. NATHAN S. LEWIS v. CALIFORNIA INSTUTE OF TECHNOLOGY ET AL. | | |

regarding members of the JCAP Board of Directors and members of the Executive Committee, "regardless of title ". Compl. ¶¶ 37, 52.

### C.     The Relator's Service as Director

The Relator initially served as JCAP 1's founding Director. Compl. ¶ 22. During this time, the DOE's Office of Inspector General audited JCAP 1 for "compliance with all financial, management, and administrative obligations and contractual requirements," ultimately finding no wrongdoing. Id. In January 2013, however, the Relator was subsequently demoted to positions as JCAP 1's Scientific Director and Project Leader of three of JCAP 1's eight sub-projects. Id. Nothing in the complaint explains why the Relator was demoted.

The Board of Directors thereafter appointed Dr. Carl A. Koval to replace the Relator as JCAP 1's Director. Compl. ¶ 23. Dr. Koval served as Director until September 30, 2014. Id. Dr. Atwater took over as JCAP 1's Director on October 1, 2014, subsequently becoming JCAP 2's Director as well. Id. ¶ 24. According to the Relator, and until Dr. Atwater's appointment as Director of both JCAP 1 and JCAP 2, "JCAP 1 was making steady progress towards its mandated effort to develop and demonstrate a device that inputs only water and sunlight to produce hydrogen and oxygen." Id. ¶ 25.

### D.     Defendants Breach the Cooperation Agreement

The Relator alleges that, since Dr. Atwater became Director of both JCAP 1 and JCAP 2, defendants have breached the Cooperative Agreement.

#### 1.     Dr. Atwater

The Relator alleges that Dr. Atwater has breached the Cooperative Agreement in a number of ways. For example, Dr. Atwater has enforced and implemented a hiring freeze and spending slow down that has "forced an accumulation of $5,500,000.00" and has used these funds "in large part to instead perform work on the JCAP 2 project, thereby billing the government for non-conforming work on JCAP 1." Compl. ¶¶ 29, 45. In addition, the Cooperative Agreement requires disclosure of conflicts of interest, Caltech has a licensing agreement with Alta Devices which returns revenue to both Caltech and Dr. Atwater, and Dr. Atwater has taken funds from JCAP 1 to pursue work that benefits Alta Devices. Id. ¶¶ 52–54. Moreover, Dr. Atwater has: billed unallowable travel costs to the JCAP 1 and JCAP 2 projects; misclassified the purchase of the Femto Second Laser Systems and the Spectroscopic Ellipsometer as items whose indirect costs are subject to reimbursement

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**            **'O'**

| Case No. | 2:18-cv-05964-CAS(RAOx) | Date | October 28, 2019 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA EX REL. NATHAN S. LEWIS v. CALIFORNIA INSTUTE OF TECHNOLOGY ET AL. | | |

from the federal government although these items were used for neither JCAP 1 nor JCAP 2 projects; overspent funds for the JCAP 1 Mesoscale project, clearing the balance by transferring funds from the under-expended accounts of other JCAP 1 sub-projects; falsified financial statements; and made material misrepresentations in the course of securing JCAP 1 and JCAP 2 funding. Compl. ¶¶ 56, 58, 60, 61, 64–65.

### 2.  Dr. Barton

According to the Relator, despite the Cooperative Agreement's conflict of interest disclosure requirements, "Dr. Barton has failed to appropriately manage and recuse herself from conflicts of interest from the JCAP 1 and JCAP 2 projects, but in fact, steered funding to perform work that would provide personal and/or institutional financial benefit." Compl. ¶ 16. That is because Dr. Barton, who served on Dow's Board of Directors and serves on its Materials Advisory Committee, "authorized the reallocation of funds for JCAP 1 to instead support work on JCAP 2, which is in an area in which Dow has a direct business interest." Id. ¶ 55. Moreover, the JCAP 1 funds that were steered to support work that benefits Alta Devices also benefitted Dow, which is an investor in Alta Devices. Id. Despite these conflicts, Dr. Barton has provided no disclosures to the DOE and has instead "falsely certified that she had no conflicts of interest with the JCAP 1 and JCAP 2 projects." Id.

### 3.  Dr. Stolper

As Caltech's Provost, Dr. Stolper served as the of JCAP 1's Board of Directors and JCAP 2's Governance Board. Compl. ¶ 15. According to the Relator Dr. Stolper used these positions "to knowingly, falsely, and/or intentionally divert, cross-bill, and misallocate congressionally appropriated federal funds to support unapproved and unauthorized research projects." Id. In addition, Dr Stolper "has failed to disclose and falsely certified that [Caltech] had no conflicts of interest with both JCAP 1 and JCAP 2 projects." Id.

### E.  The Relator Reports Wrongdoing and Suffers Retaliation

The Relator made a formal complaint regarding Dr. Atwater's alleged misconduct in March 2016. Compl. ¶ 51. The Relator does not specify, however, to whom the Relator made this complaint. The Relator also made a written request for a breakdown of the funds available for the three sub-projects that the Relator oversaw as Project Leader. Id. The Relator did not receive such a breakdown and was instead provided with a "summary

**CIVIL MINUTES – GENERAL**　　　　**'O'**

| Case No. | 2:18-cv-05964-CAS(RAOx) | Date | October 28, 2019 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA EX REL. NATHAN S. LEWIS v. CALIFORNIA INSTUTE OF TECHNOLOGY ET AL. | | |

spreadsheet" indicating that the balance of the Relator's three sub-projects was $1.6 million. Compl. ¶ 51. Dr. Barton subsequently notified the Relator, in writing, that he "needs to cease asking questions about this funding or the decision whatsoever." Compl. ¶ 51. During a faculty meeting on September 1, 2016, the Relator again relayed his concerns regarding alleged wrongdoing related to the JCAP 1 and JCAP 2 projects. Id. Caltech and Dr Barton responded by removing the Relator from his role overseeing the Chen-Huang Seminar series and by deciding not to "convene such a seminar for the entire 2016 year." Id. As a result, the Relator has suffered "loss of job responsibility, reputation, and outside consulting income derived from sustainability research and education efforts." Id. The Relator further alleges that Dr. Barton "also established and maintained an unsafe and hostile workplace involving employment threats and unmitigatated [sic] exposure to toxic and carcinogenic chemicals" to the Relator, his support personnel, and his staff. Id.

## III. LEGAL STANDARD

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. (internal citations omitted).

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory

**CIVIL MINUTES – GENERAL**      **'O'**

| Case No. | 2:18-cv-05964-CAS(RAOx) | Date | October 28, 2019 |
|----------|--------------------------|------|-------------------|
| Title    | UNITED STATES OF AMERICA EX REL. NATHAN S. LEWIS v. CALIFORNIA INSTUTE OF TECHNOLOGY ET AL. | | |

'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

In addition, Federal Rule of Civil Procedure 9(b)'s heightened pleading standard governs FCA claims. United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1054 (9th Cir. 2011). To adequately plead fraud with particularity, a party must identify "the who, what, when, where, and how of the misconduct charged." United States ex rel. Ebeid v. Lungwitz, 616 F.3d 993, 998 (9th Cir. 2010) (citing Vess v. Ciba–Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir.2003)). The allegations of fraud must merely be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." United States v. United Healthcare Ins. Co., 848 F.3d 1161, 1180 (9th Cir. 2016). "[P]erhaps the most basic consideration for a federal court in making a judgment as to the sufficiency of a pleading for purposes of Rule 9(b) is the determination of how much detail is necessary to give adequate notice to an adverse party and enable that party to prepare a responsive pleading." Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 1298 (3d ed. 2016).

However, "the heightened pleading requirements of Rule 9(b) do not apply to FCA retaliation claims. Instead, a FCA retaliation claim must meet the Rule 8(a) notice pleading standard." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1103 (9th Cir. 2008). Even if a "complaint may be inartfully drawn," dismissal is improper if the complaint "contains sufficient facts under the applicable notice pleading standards[.]" Id. at 1104.

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986); see Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

**CIVIL MINUTES – GENERAL**  '**O**'

| Case No. | 2:18-cv-05964-CAS(RAOx) | Date | October 28, 2019 |
| Title | UNITED STATES OF AMERICA EX REL. NATHAN S. LEWIS v. CALIFORNIA INSTUTE OF TECHNOLOGY ET AL. | | |

## IV.  DISCUSSION

### A.  The Relator's FCA Claim

The Relator first asserts an FCA claim against defendants.  Compl.  ¶¶ 69–75.  The FCA makes liable anyone who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" or who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim[.]"  31 U.S.C. § 3729 (a)(1)(A)(B).  To state a claim under the FCA, a plaintiff must establish: "(1) a false or fraudulent claim (2) that was material to the decision-making process (3) which defendant presented, or caused to be presented, to the United States for payment or approval (4) with knowledge that the claim was false or fraudulent."  Hooper v. Lockheed Martin Corp., 688 F.3d 1037, 1047 (9th Cir. 2012).  The Court addresses these elements in turn.

#### 1.  Falsity

The Ninth Circuit has held that, in certification cases, "the falsity requirement can be satisfied in one of two ways."  United States ex rel. Rose v. Stephens Inst., 909 F.3d 1012, 1017.  A plaintiff pursuing a claim under the express false certification theory must establish that "the entity seeking payment falsely certifies compliance with a law, rule or regulation as part of the process through which the claim for payment is submitted."  Id. (internal citation and punctuation omitted).  A plaintiff may also satisfy the FCA's falsity requirement pursuant to an implied false certification theory in which "an entity has *previously* undertaken to expressly comply with a law, rule, or regulation but does not, and that obligation is implicated by submitting a claim for payment even though a certification of compliance is not required in the process of submitting the claim."  Id. (emphasis in original) (internal citation and punctuation omitted).  Here, the Relator contends that he has satisfied the FCA's falsity requirement pursuant to both theories.  Opp. at 3–4.

#### i.  Express False Certification Theory

The Relator contends that Caltech's misconduct gives rise to liability under the FCA pursuant to an express false certification theory because Caltech "made express[] . . . false statements of continued compliance by continuing to bill the Department of Treasury for award funds[.]"  Opp. at 4.  Defendants argue that the Relator has failed to satisfy the falsity requirement under an express false certification theory because the Relator's complaint

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-05964-CAS(RAOx) | Date | October 28, 2019 |
| Title | UNITED STATES OF AMERICA EX REL. NATHAN S. LEWIS v. CALIFORNIA INSTUTE OF TECHNOLOGY ET AL. | | |

"does not allege that Caltech made any . . . certification when it obtained federal funds." Reply at 7.

The Court agrees that the Relator's complaint is devoid of allegations that satisfy the falsity requirement under an express false certification theory. "The express false certification theory requires that the claimant plainly and directly certify its compliance with certain requirements that it has breached." United States v. Aerojet Rocketdyne Holdings, Inc., 381 F. Supp. 3d 1240, 1245 (E.D. Cal. 2019). The Relator's complaint does not allege, for example, that *each time* Caltech submitted a claim for reimbursement, Caltech made an express representation to the federal government that it was complying with the government's requirements when it was not. See United States ex rel. Mei Ling v. City of Los Angeles, No. 2:11-cv-00974-PSG-JC, 2018 WL 3814498, at *6 (C.D. Cal. July 25, 2018) (finding that complaint satisfied falsity requirement pursuant to express false certificatory theory where complaint "alleges that during each year of the Claims Period, the City executed separate . . . grant agreements to obtain HUD funds . . . [and] [f]or each and every grant agreement, the City promised to comply with accessibility laws, which, the complaint further alleges, it did not do.").

Instead, the gravamen of the Relator's claim is that "[a]s part of its two separate applications" for JCAP 1 and JCAP 2, Caltech "w[as] required to make specific certifications and assurances to [the] DOE and Congress" but that, in continuing to access these funds, Caltech did not abide by the conditions of these awards. Compl. ¶ 3; see also Opp. at 15–16 ("Defendants requested advances from the Department of Treasury in order to access the award funds. . . . As such, each such request *impliedly* certified Defendants' continued compliance with conditions of the Cooperative Agreement.") (emphasis added). Accordingly, the Court concludes that the Relator's complaint sounds in an implied false certification theory, not an express false certification theory.[2] See Gonzalez v. Planned Parenthood of Los Angeles, No. 2:05-cv-08818-AHM-FMO, 2012 WL 2412080, at *7 (C.D. Cal. June 26, 2012) ("Plaintiff does not allege that each time Defendants submitted a claim for reimbursement, they stated that they were complying with billing laws. Instead, Plaintiff merely alleges that Defendants agreed to comply with those billing laws when

---

[2]    During oral argument, the Relator sought leave to amend to include additional allegations pursuant to an express false certification theory. The Court **GRANTS** the Relator's request for leave to amend.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-05964-CAS(RAOx) | Date | October 28, 2019 |
|----------|--------------------------|------|------------------|
| Title | UNITED STATES OF AMERICA EX REL. NATHAN S. LEWIS v. CALIFORNIA INSTUTE OF TECHNOLOGY ET AL. | | |

they signed provider agreements[.] . . .Thus, Plaintiff must proceed on a theory of implied false certification.").

The Court therefore proceeds to evaluate whether the Relator satisfies the FCA's falsity requirement pursuant to an implied false certification theory.

### ii.     Implied False Certification Theory

The Relator alternatively argues that he satisfies the FCA's falsity requirement under an implied false certification theory. Opp. at 14. That is because, according to the Relator, "[e]ach and every request made after [Caltech's] knowing noncompliance with the [Cooperative] Agreement included a false implied certification that Defendants were complying with change controls, [conflict of interest] rules, and reporting requirements in the Cooperative Agreement." Opp. at 16. In addition, the Relator alleges that Caltech breached the Cooperative Agreement by failing to disclose its, Dr. Atwater's and Dr. Barton's conflicts of interest, yet continued to request grant money "with the falsely implied certification of compliance with the [cost of interest] rules Defendants previously agreed to comply with in order to receive the JCAP 1 award." Id.

The Ninth Circuit first recognized implied false certification in Ebeid, finding that it "occurs when an entity has previously undertaken to expressly comply with a law, rule, or regulation, and that obligation is implicated by submitting a claim for payment even though a certification of compliance is not required in the process of submitting the claim." 616 F.3d at 998. Under the Ebeid formulation of the implied false certification theory, a plaintiff must adequately plead that "(1) the defendant explicitly undertook to comply with a law, rule or regulation that is implicated in submitting a claim for payment and that (2) claims were submitted (3) even though the defendant was not in compliance with that law, rule or regulation." Id. To satisfy this test, the Ninth Circuit held that a relator need not "*identify representative examples* of false claims to support every allegation" and "that it is sufficient to allege particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." Id. at 998–99 (emphasis added) (internal citation omitted). Thus, under Ebeid, a "claim is false under an implied certification theory when it contains no express statement regarding compliance with a statute or regulation but, *by the very fact that it has been submitted, falsely implies compliance* with any statutory or regulatory precondition to obtaining the requested government benefit." United States ex rel. Brown v. Celgene Corp., No. 2:10-cv-3165-GHK-SS, 2014 WL 3605896, at *2 (C.D. Cal. July 10, 2014) (emphasis added).

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-05964-CAS(RAOx) | Date | October 28, 2019 |
| Title | UNITED STATES OF AMERICA EX REL. NATHAN S. LEWIS v. CALIFORNIA INSTUTE OF TECHNOLOGY ET AL. |

Resolving a split amongst the various circuits, the United States Supreme Court subsequently recognized the implied false certification theory in Universal Health Servs., Inc. v. United States ex rel. Escobar, 136 S. Ct. 1989 (2016) ("Escobar"). There, the Supreme Court held "that the implied certification theory can be a basis for liability, *at least* where two conditions are satisfied: first, the claim does not merely request payment, but also makes specific representations about the goods or services provided; and second, the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes those representations misleading half-truths." Id. at 2001 (emphasis added). Based on this language, several courts within the Ninth Circuit concluded that "Escobar did not establish a rigid two-part test for falsity that must be met in every single implied certification case." See, e.g., United States ex rel. Rose v. Stephens Inst., No. 09-cv-05966-PJH, 2016 WL 5076214, at *5 (N.D. Cal. Sept. 20, 2016); accord United States v. Celgene Corp., 226 F. Supp. 3d 1032, 1044–45 (C.D. Cal. 2016) ("Nor were the two conditions [articulated in Escobar] intended to describe the outer reaches of FCA liability: the Court stated that liability could be found 'at least' where these conditions were satisfied."). The Ninth Circuit, however, has since clarified that these requirements are mandatory. See Rose, 909 F.3d at 1018 ("Relators must satisfy Escobar's two conditions to prove falsity, unless and until our court, en banc, interprets Escobar differently.").

Defendants assert that the Relator's complaint does not satisfy Escobar's requirements for falsity in implied false certification cases. Reply at 5. That is because, according to defendants, the Relator "does not allege that Caltech made any specific representations when it submitted claims for payments—much less explain how such representations could constitute 'misleading half-truths.'" Id. The Court finds the following cases instructive.

In Escobar, a healthcare provider submitted claims for payment for mental health counseling services and prescription medication provided by unlicensed and untrained professionals. 136 S. Ct. at 1997. When the provider submitted reimbursement claims, it "used payment codes corresponding to different services that its staff provided[.]" Id. The Medicaid program under which the provider sought reimbursement required facilities, including the provider, "to have specific types of clinicians on staff, delineate[d] licensing requirements for particular positions (like psychiatrists, social workers, and nurses), and detail[ed] supervision requirements for other staff." Id. at 1998. Thus, by including allegations regarding the use of various codes indicating the *performance of specific*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-05964-CAS(RAOx) | Date | October 28, 2019 |
|----------|--------------------------|------|------------------|
| Title | UNITED STATES OF AMERICA EX REL. NATHAN S. LEWIS v. CALIFORNIA INSTUTE OF TECHNOLOGY ET AL. | | |

*services*, the provider impliedly certified that it complied with the obligations for receiving *payment for these services*, such as proper licensing and training. Id. at 2001.

In United States ex rel. Campie v. Gilead Sciences, Inc., a post-Escobar case, the Ninth Circuit held that to succeed on an implied false certification claim, a relator "must not merely request payment, but also make specific representations about the goods or services provided." 862 F.3d 890, 902 (9th Cir. 2017) ("Campie"). There, former employees of a pharmaceutical manufacturer alleged that the manufacturer sought and received reimbursement for certain noncompliant pharmaceuticals that were not eligible to receive payment or reimbursement. Id. at 895. When the manufacturer sought reimbursement, it represented that reimbursement was for three specific pharmaceuticals that the Food and Drug Administration ("FDA") had previously approved for sale under the trade names Truvada, Emtriva, and Atripla. Id. at 902. According to these employees, however, the actual pharmaceuticals for which the manufacturer sought reimbursement deviated from the formulas the FDA had previously approved and further violated FDA regulations because they were adulterated and misbranded. Campie, 862 F.3d at 897. Accordingly, the manufacturer's reimbursement claims for Truvada, Emtriva, and Atripla do more than "merely request payment, but also make specific representations about the goods or services provided . . . [since these] drug names necessarily refer to specific drugs under the FDA's regulatory regime." Id. at 902–03.

Many of the allegations in the Relator's complaint stand in contrast to those in Escobar and Campie.[3]  The complaint alleges how defendants' actions purportedly breached the terms of the Cooperative Agreement, for example, by wrongfully accumulating funds that were obligated to be expended on JCAP 1, by reallocating JCAP 1 funding for JCAP 2, and by failing to disclose conflicts of interest related to Dow and

---

[3]     The complaint does allege, however, that "Dr. Atwater authorized the procurement of various items . . . [that] were *categorized* as materials and supplies, resulting in billing associated with indirect costs to the Federal Government . . . [but that] these items were actually part of a fabrication of instrumentation having a cumulative cost of greater than $5,000, and thus should have been classified as instrumentation with no associated indirect costs." Compl. ¶ 57 (emphasis added). In particular, the Relator points to the purchase of the Femto Second Laser System and the Spectroscopic Ellipsometer with respective costs of $1 million and $250,000. Id. ¶ 58. The Relator further alleges that these items "were primarily used for non JCAP 1 nor JCAP 2 projects[.]" Id.

**CIVIL MINUTES – GENERAL**       **'O'**

| Case No. | 2:18-cv-05964-CAS(RAOx) | Date | October 28, 2019 |
|----------|--------------------------|------|-------------------|
| Title | UNITED STATES OF AMERICA EX REL. NATHAN S. LEWIS v. CALIFORNIA INSTUTE OF TECHNOLOGY ET AL. | | |

Alta Devices. Compl. ¶¶ 44–47, 53–55. And the complaint also alleges that defendants "fraudulently bill[ed] the government for non-conforming work, materials, supplies, travel, and other expenses on both the JCAP 1 and JCAP 2 projects, as well as for work performed for private corporations with license agreements with Caltech." Id. ¶ 49. According to the Relator, these allegations are sufficient because he "need only allege the funding conditions, the violations of those conditions, and continued requests for funding to establish falsity." Opp. at 17. While the Court finds that these allegations might satisfy the previous Ebeid formulation in implied false certification cases, the Supreme Court in Escobar and the Ninth Circuit in Rose now appear to require more. See, e.g., United States ex rel. Mateski v. Raytheon Co., No. 2:06-cv-03614-ODW-KS, 2017 WL 1954942, at *5 (C.D. Cal. Feb. 10, 2017) ("mere claims for payment no longer suffice under an implied certification theory; instead, the claims must contain specific representations about the defendant's performance.") (internal citation and punctuation omitted).

Accordingly, the Relator fails to plead falsity, under an implied false certification theory, sufficient to satisfy Escobar and Rose.

### 2.      Scienter and Materiality

The parties also dispute whether the Relator's complaint adequately satisfies the FCA's scienter and materiality requirements. See, e.g., Opp. at 19–23; Reply at 7–10. Although the Relator fails to adequately plead a claim under an implied false certification theory, the Court proceeds to evaluate whether the Relator's complaint satisfies these additional elements. See United States ex rel. Zissa v. Santa Barbara Cty. Alcohol, Drug, & Mental Health Servs., No. 2:14-cv-6891-DMG-RZ, 2019 WL 3291579, at *5 (C.D. Cal. Mar. 12, 2019) ("Although the Court could resolve the MTD solely on the grounds that Relator's allegations pertaining to falsity are inadequate, the Court will also address scienter and materiality in order to give the parties guidance regarding pleading deficiencies in any amended pleading.").

### i.      Scienter

The scienter element requires that a defendant act "knowingly," which the FCA defines as: "(1) actual knowledge of the information; (2) deliberate ignorance of the truth or falsity of the information; or (3) reckless disregard of the truth or falsity of the information." Godecke v. Kinetic Concepts, Inc., 937 F.3d 1201, 1211 (9th Cir. 2019) (citing 31 U.S.C. § 3729(b)(1)(A)). Although the other elements of an FCA claim are subject to Rule 9(b)'s heightened pleading standard, allegations regarding the scienter

**CIVIL MINUTES – GENERAL**        **'O'**

| Case No. | 2:18-cv-05964-CAS(RAOx) | Date | October 28, 2019 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA EX REL. NATHAN S. LEWIS v. CALIFORNIA INSTUTE OF TECHNOLOGY ET AL. | | |

element "need not be pleaded with particularity." Mei Ling, 2018 WL 3814498, at \*8; see also Zissa, 2019 WL 3291579, at \*5 (determining that, for the purposes of construing the FCA's scienter requirement on a motion to dismiss, "[k]nowledge and other conditions . . . including scienter, can be alleged generally under the less stringent Rule 8 pleading standard.").

Here, defendants allege that the Relator has failed to plead sufficient facts to satisfy the scienter requirement because "innocent mistakes, mere negligent misrepresentation and differences in interpretations will not suffice to create liability." Mot. at 10 n.4 (citing United States v. Corinthian Colleges, 655 F.3d 984, 996 (9th Cir. 2011)). Critically, defendants overlook certain allegations in the Relator's complaint. For example, the Relator alleges that "[d]efendants were explicitly told by [the DOE] not to use any JCAP 1 project funds unexpended by September 30, 2015 to perform work on the JCAP 2 project[.]" Compl. ¶ 33. Dr. Atwater specifically indicated to the Relator, "[i]n or around November 2014, . . . that no funds would be taken from the JCAP 1 projects." Compl. ¶ 29. Yet, according to the Relator, "Dr. Atwater instructed JCAP 1 personnel and/or researchers to bill work for the JCAP 2 project, through the JCAP 1 funds, prior to the commencement of the JCAP 2 project." Id. ¶ 19. Moreover, the complaint includes a specific example of Dr. Atwater's instructions to cross-bill work for JCAP 2 to JCAP 1. The Relator alleges that Dr. Slovodan Mitrovic, a JCAP 1 scientist, notified the Relator by email on June 20, 2016, that "Dr. Atwater assigned Dr. Mitrovic to spend forty (40) percent of his time on 'topics that are aligned with the milestones of JCAP [2],' which was before the commence [sic] of JCAP 2." Id. ¶ 47 (internal punctuation in original).

These allegations are sufficient to establish, at the very least, that Dr. Atwater acted with the requisite scienter insofar as the Relator contends that Dr. Atwater knowingly used, and instructed others to use, unspent JCAP 1 funds towards JCAP 2. See United States v. Kinetic Concepts, Inc., No. 2:08-cv-01885-BRO-AGR, 2017 WL 2713730, at \*11 (C.D. Cal. Mar. 6, 2017) (finding scienter element met where plaintiff alleged that defendant "submitted false claims despite knowing that its claims misused the billing codes[.]"). Given that the Relator alleges that Dr. Atwater managed JCAP 1 and JCAP 2 in his position as Director, these allegations are also sufficient to impute Dr. Atwater's scienter to Caltech. See Zissa, 2019 WL 3291579, at \*5 (finding that, for purposes of FCA's scienter element, agent's knowledge could be imputed to principal because "courts have recognized that this basic agency theory of liability applies to FCA cases").

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-05964-CAS(RAOx) | Date | October 28, 2019 |
|----------|--------------------------|------|-------------------|
| Title | UNITED STATES OF AMERICA EX REL. NATHAN S. LEWIS v. CALIFORNIA INSTUTE OF TECHNOLOGY ET AL. | | |

Defendants also contend that the Relator fails to sufficiently plead scienter with respect to Dr. Barton and Dr Stolper specifically because the Relator "alleges no facts to show that Dr. Barton or Dr. Stolper personally had a role in submitting a false claim for payment or did so knowingly." Reply at 12. To establish liability against an individual defendant under the FCA, the Relator must allege that the individual defendant had a "role in making a false statement to the United States government." Corinthian, 655 F.3d at 998. Moreover, the FCA makes liable anyone that "knowingly presents, or causes to be presented, a false or fraudulent claim" or "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729 (a)(1)(A)(B).

Here, the Relator specifically alleges that "[t]he financial, accounting, administrative, and record keeping functions of the JCAP 1 and JCAP 2 projects at Caltech are performed under the direction and supervision of Caltech's Division of CCE of which . . . Dr. Barton has served as the CCE Division Chair from June 2009 to the present." Compl. ¶ 20. The parties dispute whether this allegation is sufficient to establish that Dr. Barton "had a role" in making requests for payment to the federal government. Corinthian, 655 F.3d at 998. The Relator further alleges that Dr. Barton was the individual who responded to the Relator after the Relator made a formal complaint regarding Dr. Atwater in March 2016 and after he requested a breakdown of available funds, instead telling the Relator that he "needs to cease asking questions about this funding or the decision whatsoever." Compl. ¶ 51.

As to Dr. Stolper, the complaint alleges that Dr. Stolper served as Chair of both the JCAP 1 Board of Directors and the JCAP 2 Governance Board. Compl. ¶ 9. As the Relator points out, in defining "knowingly" for the purposes of FCA liability, the Ninth Circuit has noted that "Congress attempted to reach what has become known as the 'ostrich' type situation where an individual has 'buried his head in the sand' and failed to make simple inquiries which would alert him that false claims are being submitted." United States v. Bourseau, 531 F.3d 1159, 1168 (9th Cir. 2008) (citing S.Rep. No. 99–345, at 21 (1986)). Thus, the Relator alleges that Dr. Stolper may be liable because of his failures, despite his oversight position, to make inquiries that would alert him that false claims were being made. Opp. at 24.

The Court finds that the Relator has sufficiently pleaded scienter as to Caltech and Dr. Atwater. The Relator acknowledges that "[w]hile the precise scope of Barton and Stolper's involvement is less clear, their oversight positions and failure to disclose conflicts

**CIVIL MINUTES – GENERAL**      **'O'**

| Case No. | 2:18-cv-05964-CAS(RAOx) | Date | October 28, 2019 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA EX REL. NATHAN S. LEWIS v. CALIFORNIA INSTUTE OF TECHNOLOGY ET AL. | | |

may give rise to liability." Opp. at 25. Because the Court concludes that the Relator has failed to satisfy the FCA's falsity requirement, the Court need not resolve this question at this juncture.

### ii.  Materiality

The FCA's materiality requirement is "demanding," and the FCA "defines the term 'material' as 'having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." Godecke, 937 F.3d 1213 (citing 31 U.S.C. § 3729(b)(4)). Defendants contend that dismissal is appropriate because the Relator has not satisfied this "demanding" requirement.

"Courts must look to several factors to evaluate materiality." See Zissa, 2019 WL 3291579, at *5. First, "the Government's decision to expressly identify a provision as a condition of payment is relevant, but not automatically dispositive." Escobar, 136 S. Ct. at 2002. Second, evidence showing the "defendant knows that the Government consistently refuses to pay claims in the mine run of cases based on noncompliance with the particular statutory, regulatory, or contractual requirement" supports a finding of materiality. Id. Third, if "the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated," that is "strong" evidence the violation is immaterial. Id. at 2002. Fourth, a violation is likely immaterial "if the Government regularly pays a particular type of claim in full despite actual knowledge that certain requirements were violated, and has signaled no change in position[.]" Id. at 2003–04. Fifth, "the magnitude of the violation matters—the likelihood of materiality increases with a violation's severity." Zissa, 2019 WL 3291579, at *6.

The parties dispute whether the Relator's complaint adequately alleges materiality. See, e.g., Opp. at 18–23; Reply at 7–10. With respect to the first factor, the complaint alleges that the United States was "unaware of the falsity of the claims and/or statements made by [defendants], and in reliance on the accuracy thereof, paid and may continue to pay for and support [defendants'] unapproved and unauthorized research projects." Compl. ¶ 74. The complaint further alleges that the DOE specifically audited JCAP 1 previously "for compliance with all financial, management, and administrative obligations and contractual requirements," and that the DOE "explicitly told . . . [defendants] . . . not to use any JCAP 1 project funds unexpended by September 30, 2015 to perform work on the JCAP 2 project statement of work." Compl. ¶¶ 22, 33. With respect to the second, third, and fourth factors, these allegations raise an inference that the government deems

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-05964-CAS(RAOx) | Date | October 28, 2019 |
| Title | UNITED STATES OF AMERICA EX REL. NATHAN S. LEWIS v. CALIFORNIA INSTUTE OF TECHNOLOGY ET AL. | | |

compliance with these conditions for payment material.[4]  As to the fifth factor, the Relator alleges that defendants' conduct caused the "uncontrolled and unmonitored spending" of "approximately $4,000,000.00 to $5,000,000.00" and that through erroneous misclassification, the DOE was billed for $1.25 million in instrumentation for the Femto Second Laser System and the Spectroscopic Ellipsometer.  Id. ¶¶ 49, 57–58.  The Court is mindful of the Supreme Court's holding in Escobar that the FCA's materiality requirement is not "too fact intensive for courts to dismiss [FCA] cases on a motion to dismiss or at summary judgment."  136 S. Ct. at 2004 n.6.  But, at this juncture, the complaint contains sufficient allegations regarding the materiality of defendants' omissions to withstand a motion to dismiss.

The Court therefore concludes that whether these omissions are material is a matter better resolved on a motion for summary judgment.  See United States ex rel. Fisher v. IASIS Healthcare LLC, No. CV-15-00872-PHX-JJT, 2016 WL 6610675, at *14 (D. Ariz. Nov. 9, 2016) (denying motion to dismiss FCA claim based on insufficient allegations regarding materiality because "many of these factors are either alleged by Relators here or are *simply premature* given the posture of this action.") (emphasis added).

## B.     The Relator's FCA Retaliation Claim

The Relator also asserts an FCA retaliation claim against Caltech only.  Compl. ¶¶ 76–80.   Section 3730(h)(1) provides relief for a whistleblower whose employer discriminates against the whistleblower because of the whistleblower's lawful acts done in furtherance of an FCA investigation or lawsuit.  Wittenbrock v. Sunovion Pharm. Inc., No. 19-cv-00342-JVS-SHK, 2019 WL 4452977, at *2 (C.D. Cal. July 29, 2019).  "A plaintiff alleging a FCA retaliation claim must show three elements: (1) that he or she engaged in activity protected under the statute; (2) that the employer knew the plaintiff engaged in protected activity; and (3) that the employer discriminated against the plaintiff because he or she engaged in protected activity."  Mendiondo, 521 F.3d at 1103.  A plaintiff need only "show that he or she suspected that the defendant submitted a false claim—not that the defendant actually submitted one."  Id.  "An imperfect complaint containing sufficient facts alleging all three elements of an FCA retaliation is enough to survive dismissal under Rule 12(b)(6)."  United States ex rel. Pecanic v. Sumitomo Elec. Interconnect Prod., Inc., No.

---

[4]     The United States filed a statement of interest to clarify that "its decision to decline intervention should not be construed as a statement regarding the merits of this action." Dkt. 29 at 1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:18-cv-05964-CAS(RAOx) | Date | October 28, 2019 |
| Title | UNITED STATES OF AMERICA EX REL. NATHAN S. LEWIS v. CALIFORNIA INSTUTE OF TECHNOLOGY ET AL. | | |

12-cv-0602-L-NLS, 2013 WL 774177, at *7 (S.D. Cal. Feb. 28, 2013). Caltech contends dismissal of this claim is appropriate because the Relator fails to plead the requisite elements. Mot. at 18–19. The Court addresses each element in turn.

> 1.     **Protected Activity**

Defendants contend that the Relator fails to satisfy the first element because he "contends only that Caltech allegedly breached the Cooperative Agreement with the DOE and violated federal regulations." Mot. at 19; see also United States ex rel. Hopper v. Anton, 91 F.3d 1261, 1269 (9th Cir. 1996) (finding that employee who "was merely attempting to get the School District to comply with Federal and State regulations" was not engaged in "protected activity" because "[h]er investigatory activity did not have any nexus to the FCA."). The Court disagrees.

For the purposes of the first element, "an employee engages in protected activity where (1) the employee in good faith believes, and (2) a reasonable employee in the same or similar circumstances might believe, that the employer is possibly committing fraud against the government." Moore v. California Inst. of Tech. Jet Propulsion Lab., 275 F.3d 838, 845 (9th Cir. 2002). Moreover, a relator need not "specifically communicate an intention to bring an FCA action, . . . internal reporting is sufficient to plead the first element." United States ex rel. Lim v. Salient Fed. Sols. Inc., No. 16-cv-740-GPC-AGS, 2018 WL 2128666, at *4 (S.D. Cal. May 9, 2018).

Here, the complaint alleges that Relator previously served as JCAP 1's founding Director, during which time the DOE's Office of Inspector General audited JCAP 1 "for compliance with all financial, management, and administrative obligations and contractual requirements." Compl. ¶ 22. The Relator also alleges that in March 2016, he made a formal complaint to Dr. Atwater regarding Dr. Atwater's reallocations of withheld JCAP 1 funds and requested, in writing, a breakdown of the available funds for the three JCAP 1 sub-projects that the Relator oversaw in his capacity as Project Leader. Id. 48–51. Yet, according to the Relator, he "was ultimately told in writing by . . . Dr. Barton that [he] needs to cease asking questions about this funding or the decision whatsoever." Id. ¶ 51. Taken together, these allegations are sufficient to raise the inference that the Relator was investigating fraud on the government rather than "'merely attempting' to get an organization to 'comply with Federal and State regulations.'" Lim, 2018 WL 2128666, at *4 ("[plaintiff's] actions and questioning of the coding changes show that he was investigating fraud, which constitutes an act in furtherance of FCA litigation.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-05964-CAS(RAOx) | Date | October 28, 2019 |
| Title | UNITED STATES OF AMERICA EX REL. NATHAN S. LEWIS v. CALIFORNIA INSTUTE OF TECHNOLOGY ET AL. | | |

### 2. Notice to Dr. Barton

Defendants also contend that the Relator's FCA retaliation claim fails because the Relator "has not established a causal connection between his alleged protected activity and retaliation." Mot. at 20. That is because, according to defendants, Relator "admits that he was removed from overseeing the seminar series on August 31, 2016, *before* he allegedly raised his concerns at a Faculty hearing committee meeting on September 1, 2016." Reply at 14 (emphasis in original) (internal citation and quotation marks omitted). The Court does not find defendants' argument availing.

Defendants cite the Ninth Circuit's opinion in <u>Cohen v. Fred Meyer, Inc.</u>, for the proposition that "adverse action before employee [an] engage[s] in protected activity does not constitute unlawful retaliation[.]" 686 F.2d 793, 797 (9th Cir. 1982); Reply at 14. But defendants' focus on the Relator's allegation that he was demoted on August 31, 2016, and relayed his concerns one day *later*, on September 1, 2016, ignores other allegations in the complaint. The Relator specifically alleges that it was Caltech and Dr. Barton that removed the Relator from his role overseeing the Chen-Huang Seminar Series. Compl. ¶ 66. The Relator alleges that "[i]n or around March of 2016," he "first made a formal complaint relating to . . . Dr. Atwater"; that the Relator made a written request for a breakdown of the funds available for his three sub-projects; and that the Relator "was ultimately told in writing by . . . Dr. Barton that [the] Relator needs to cease asking questions about this funding or the decision whatsoever." <u>Id.</u> ¶ 51. Accordingly, these allegations, including that Dr. Barton responded to the Relator's written request for a breakdown of available JCAP 1 funds, raise the inference that Dr. Barton had notice of the Relator's protected investigative activity prior to when the Relator alleges that Dr. Barton removed the Relator from his oversight position.

### 3. Adverse Employment Action

Defendants argue that the Relator cannot maintain an FCA retaliation claim because the Relator "is still employed and Caltech did not alter his salary, benefits, or job title." Mot. at 20. As a result, defendants urge that the Relator cannot satisfy the third element, which requires that discrimination result in an adverse employment action, because "the kind of minor change in job responsibilities [the Relator] experienced—his removal from overseeing an annual lecture series with no change in pay, title, or benefits—is not an adverse action." Reply at 13.

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:18-cv-05964-CAS(RAOx) | Date | October 28, 2019 |
| Title | UNITED STATES OF AMERICA EX REL. NATHAN S. LEWIS v. CALIFORNIA INSTUTE OF TECHNOLOGY ET AL. | | |

For the purposes of the third element of an FCA retaliation claim, "behavior does not constitute retaliation . . . unless it would be sufficient to constitute an adverse employment action under Title VII." Moore, 275 F.3d at 847–48. Under this formulation, "an action may be cognizable as discrimination . . . if it is reasonably likely to deter employees from engaging in activity protected under" the FCA. Id. at 848. The Ninth Circuit "define[s] 'adverse employment action' broadly." Fonseca v. Sysco Food Servs. of Arizona, Inc., 374 F.3d 840, 847 (9th Cir. 2004). "Transfers of job duties and undeserved performance ratings, if proven, would constitute "adverse employment decisions[.]'" Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987). So too, can "a transfer to another job of the same pay and status[.]" Ray v. Henderson, 217 F.3d 1234, 1241 (9th Cir. 2000) (citing St. John v. Employment Development Dept., 642 F.2d 273, 274 (9th Cir.1981)); see also Passer v. American Chemical Soc., 935 F.2d 322, 330–331 (D.C.Cir.1991) (employer's cancellation of public event honoring employee constitutes "adverse employment action" within the meaning of the Age Discrimination in Employment Act, which has anti-retaliatory provision parallel to those of FCA and Title VII).

Here, the Relator alleges that as a result of his whistleblower activities, "Caltech and Dr. Barton retaliated . . . in the form of removing [the Relator] from oversight of the Chen-Huang Seminar Series endowment[.]" Compl. ¶ 66. Given the "broad" array of discrimination that can constitute "adverse employment action," the Court cannot say, at this juncture and as a matter of law, that the Relator's removal from his oversight position is *not,* itself, "reasonably likely to deter employees from engaging" in similar protected activity. Moore, 275 F.3d at 848. Moreover, the Relator further alleges that "Caltech and Dr. Barton did not convene [a Chen-Huang] seminar for the entire 2016 year" and that the Relator "has since been restricted from being able to widen his reputation" thereby resulting in the Relator's "loss of job responsibility, reputation, and outside consulting income[.]" Compl. ¶ 66. These additional allegations further make clear that the Court cannot decide, at the pleading stage, that the Relator's demotion from his oversight position is *not* an adverse employment action. See Delacruz v. Tripler Army Med., 507 F. Supp. 2d 1117, 1123–24 (D. Haw. 2007) (noting that, on a motion for summary judgment, "actions such as being excluded from meetings, seminars, and positions that would have made the employee eligible for salary increases . . . are sufficient to establish adverse employment actions.").

The Court concludes that the Relator has sufficiently stated an FCA retaliation claim. Accordingly, the Court **DENIES** defendants' motion to dismiss this claim.

| CIVIL MINUTES – GENERAL | | 'O' | |
|---|---|---|---|
| Case No. | 2:18-cv-05964-CAS(RAOx) | Date | October 28, 2019 |
| Title | UNITED STATES OF AMERICA EX REL. NATHAN S. LEWIS v. CALIFORNIA INSTUTE OF TECHNOLOGY ET AL. | | |

## V.    CONCLUSION

In accordance with the foregoing, the Court **GRANTS**, in part, and **DENIES**, in part, defendants' motion to dismiss.  The Court **DISMISSES** the Relator's FCA claim **without prejudice**.  The Court **DENIES** defendants' motion to dismiss the Relator's FCA retaliation claim.  The Relator shall file an amended complaint within **thirty (30) days**.

The Court **GRANTS** the Relator's request for judicial notice.

IT IS SO ORDERED.

|  | 00 | : | 21 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |